**VAZMAN, S. A., Plaintiff,**

v.

**FIDELITY INTERNATIONAL BANK, Defendant.**

No. 76 Civ. 2275

United States District Court,
S. D. New York.

Sept. 1, 1976.

Morrison, Paul, Stillman & Beiley, New York City, for plaintiff; Edward Farman, New York City, of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant; Robert E. Juceam, New York City, of counsel.

Freehill, Hogan & Mahar, New York City, for plaintiffs-intervenors; Philip V. Moyles, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Vazman, S.A. ("Vazman"), a corporation organized under the laws of the Kingdom of Spain and not doing business in this District, commenced this action against the defendant Fidelity International Bank ("Fidelity") to recover demurrage allegedly due under the terms of a letter of credit issued by Fidelity for the account of Texas Trading & Milling Corp. ("Texas Trading") in connection with the latter's purchase of cement to be delivered to Lagos-Apapa, a Nigerian port. Fidelity denies that the demurrage is due under the terms of the letter of credit.

Campos Shipping Co., Ltd. and Sanmarco Vrontados S.A., the owners of two vessels ("Shipowners") that carried part of the cement to Lagos-Apapa, claim that demurrage charges are due them from Finaves S.A. ("Finaves"), the charterer of the vessels. The Shipowners now move under Rule 24 of the Federal Rules of Civil Procedure for leave to intervene in Vazman's action.

To place the matter in perspective it is necessary to refer to a series of transactions that bear upon the various claims. Texas Trading entered into an agreement to supply the Government of Nigeria with cement to be delivered at Lagos-Apapa. To fulfill its commitment, Texas Trading entered into a contract to purchase the cement from Vazman, the plaintiff herein, and to cover the purchase price and any demurrage, Texas Trading caused Fidelity to issue its own letter of credit (the subject matter of this suit) in favor of Vazman.

Vazman then entered into an agreement with Finaves for the latter to transport the cement to Nigeria. Finaves in turn chartered two of the Shipowners' vessels, in which Finaves transported the cement from Spain to Nigeria. The charter parties obligate Finaves to pay demurrage to the Shipowners in dollar amounts that, with respect to one ship, differ from those that Texas Trading is obligated to pay Vazman. Unusually large demurrage charges were incurred in connection with the delivery of the cement at the port of Lagos-Apapa. The charter parties between the Shipowners and Finaves make no reference to the Fidelity letter of credit issued to the plaintiff, Vazman. Nevertheless, in the complaint under which they seek intervention, the Shipowners assert that they are entitled to recover demurrage directly from both Vazman and Fidelity. They thus contend that under Rule 24(a)(2) they have an absolute right to intervene in Vazman's action against Fidelity, or that, in any event, they should be granted permissive intervention under Rule 24(b)(2). We consider each claim separately.

## INTERVENTION AS OF RIGHT

Rule 24(a)(2) sets forth the following three prerequisites for intervention as of right: (1) The party seeking to intervene must claim an interest in the subject matter of the litigation; (2) that interest must be adversely affected by the disposition of the action; and (3) it must not be adequately represented by existing parties. Because the movants fail to satisfy even one of these conditions, they are not entitled to intervene as of right.

■ It is apparent that the Shipowners lack an interest relating to the "property or transaction which is subject of the action." Although the nature of an "interest" sufficient to support intervention of right has yet to be precisely determined,[1] it is clear that such an interest "must be significant, must be direct rather than contingent, and

1. For example, *compare Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1964), *with Donaldson v.* *United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit."[2]

In an effort to bring themselves under this standard, the Shipowners assert that they are third party beneficiaries of the Fidelity letter of credit under which Vazman's claims for demurrage payments arise. However, under both New York law and general contract principles, a third party may sue on a contract only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him.[3] The Shipowners have presented no evidence that Fidelity and Vazman intended that the Shipowners benefit from the terms of the letter of credit. Nowhere does the instrument refer to the Shipowners by name or by class and nowhere does it indicate that payments are to be made for the benefit of anyone but Vazman or Vazman's designated assignees. In fact, the letter of credit expressly states that it is subject to and governed by the Uniform Customs and Practice for Documentary Credits, which provides that letters of credit are "separate transactions from the sales or other contracts on which they may be based and banks are in no way concerned with or bound by such contracts."[4]

To support their position the Shipowners merely point out that the letter of credit is by its terms transferable and that payments under it would create a fund out of which the demurrage owed them by Finaves might be paid. The fact of the matter is, however, that the letter of credit was never negotiated to the Shipowners. Further, the Shipowners have failed—understandably enough—to direct the Court to any legal theory under which a cognizable right to payments made by Fidelity might arise in them.[5] Indeed, the very purpose of a letter of credit—to facilitate and ensure payment to expressly designated beneficiaries and thus to encourage those beneficiaries to provide goods or services in the first instance—would be defeated were remote third parties allowed to assert rights under or against the instrument.[6]

In reality, any right to demurrage that the Shipowners have arises under their independent contracts of charter with Finaves, a party that is not subject to the jurisdiction of this Court. Those contracts require disputes to be settled by arbitration in London according to English law. The Shipowners here attempt to by-pass entire-

2. *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341 (S.D.N.Y.1974), *aff'd without opinion,* 515 F.2d 505 (2d Cir. 1975).

3. *Ogden Dev. Corp. v. Federal Ins. Co.,* 508 F.2d 583 (2d Cir.1974); *Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951, 954 (2d Cir. 1970); *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 399 F.2d 289 (2d Cir. 1968); *Resinol v. Valentine Dolls, Inc.,* 14 A.D.2d 853, 220 N.Y.S.2d 884 (1961); *Snyder Plumbing & Heating Corp. v. Purcell,* 9 A.D.2d 505, 195 N.Y.S.2d 780 (1959).

4. International Chamber of Commerce, Uniform Customs and Practice for Documentary Credits, *general provision c,* at 6 (1962).

5. Counsel for the Shipowners has advanced the thesis that the Shipowners possess an "inchoate maritime lien" on any payments that Fidelity might make to Vazman under the letter of credit. This argument disregards the Shipowners' basic lack of cognizable interest in the subject matter of this suit. As anomalous as a maritime lien might be, it still requires the existence of a claim against the res upon which it operates before it can come into existence. In addition, the enforcement of such a lien (which the Shipowners would be seeking were they allowed to intervene) contemplates a res over which the Court has jurisdiction. Because the present action merely seeks payment of a debt, no such res exists here. *See Liberty Mut. Ins. Co. v. United Towing Co.,* 369 F.2d 382 (9th Cir. 1966). Finally, in asking us to recognize an "inchoate" lien on intangibles based on an obligation to pay demurrage, counsel in effect urges that we create an entirely new species of maritime lien. *See* 7A J. Moore, Federal Practice, ¶ c. 13, at 686 (1976). However, the class of legal situations in which maritime liens arise has long since been determined, and new types of liens may not arise by analogy or by judicial fiat. *In re Admiralty Lines, Ltd.,* 280 F.Supp. 601, 604 (E.D.La.1968), *aff'd,* 410 F.2d 398 (5th Cir. 1969).

6. *See* G. Gilmore & C. Black, The Law of Admiralty 115–16, 120 (2d ed.1975).

ly the party with whom they dealt and to assert claims against parties twice removed in privity from them. Rule 24(a) was never intended to apply to such a situation.[7]

In light of our finding that the Shipowners have no legal claim to any benefit under the letter of credit, it is perhaps unnecessary to consider whether the remaining prerequisites for intervention of right have been met. However, the Shipowners have failed altogether to support their claim that Vazman's success in the instant action would impair their ability to collect demurrage from Finaves. Moreover, Rule 24(a) requires that a denial of intervention impair the would-be intervenor's ability to protect his interests in the subject matter of the litigation in which he seeks to intervene, and, as we have found, the Shipowners have no such interest. Their only possible "interest" is an indirect benefit to them if Vazman prevails in this suit. The contract that Vazman entered into with Finaves, under which the latter was to transport the cement from Spain to Nigeria, provides that the payment of demurrage to Finaves is "guaranteed" by the Fidelity letter of credit and that Vazman will assign to Finaves all demurrage payments received from Fidelity. Such payments might thus create a fund that Finaves could use to discharge its demurrage obligation to the Shipowners—an obligation quite different in amount from that which may be due Vazman from Texas Trading and due under the Fidelity letter of credit. But the very nature of this rather contingent interest reveals that the Shipowners are more than adequately represented by Vazman, since Vazman is pressing to recover full demurrage from Fidelity on the letter of credit. Thus, the final condition for intervention of right under Rule 24(a), inadequate representation by existing parties to the suit, has not been satisfied. The motion for intervention as of right is therefore denied.

## PERMISSIVE INTERVENTION

■ The Shipowners also seek to intervene pursuant to Rule 24(b)(2) which provides:

[A]nyone may be permitted to intervene in any action . . . when [his] claim or defense and the main action have a question of law or fact in common . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

From our finding that any rights of the Shipowners to demurrage arise out of their agreements with a party not subject to the jurisdiction of this Court, it necessarily follows that the Shipowners are not appropriate candidates for a grant of permissive intervention. The question of the Shipowners' rights against Finaves is completely independent of the question of Vazman's rights under the Fidelity letter of credit. Finaves' liability to the Shipowners is a matter to be determined in litigation between them, and not in this action, in which Finaves is not a party. Moreover, there is some dispute over whether the Shipowners have not already compromised their claims against Finaves. Thus, any determination in the present action of the extent to which the Shipowners are entitled to demurrage would not only cause inordinate delay and place a great burden on the Court and the existing parties, but would be of no benefit whatsoever to the Shipowners because it would not bind Finaves.

Significantly, the only question common to both the Shipowners' claim and Vazman's claim is that of the actual amount of lag time in the Nigerian port, as to which there is no dispute.

When the burdens of intervention are so exceedingly great and the benefits all but nonexistent, permissive intervention must be denied.

So ordered.

7. *See United States v. 936.71 Acres of Land*, 418 F.2d 551 (5th Cir. 1969); *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D.N.Y.1974), *aff'd without opinion*, 515 F.2d 505 (2d Cir. 1975); *Kheel v. American S.S. Owners Mut. Protection & Indem. Ass'n*, 45 F.R.D. 281 (S.D.N.Y.1968); *Peterson v. United States*, 41 F.R.D. 131 (D.Minn.1966). *See also Rey v. Penn Shipping Co.*, 277 F.2d 905 (2d Cir. 1960) (Friendly, J.).