KYUNG SUP AHN, M.C., P.C. Retirement Trust Pension: and Kyung Sup Ahn, as guardian for Anthony Ahn, a minor child, Plaintiffs,

v.

ROONEY, PACE INC., and Robert Edelstein, Defendants.

No. 85 Civ. 3424 (CBM).

United States District Court, S.D. New York.

Dec. 19, 1985.

Haas, Greenstein, Hauser, Sims, Cohen & Gerstein, P.C. by Randall T. Sims, New York City, for plaintiffs.

Regina Felton, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

In this action alleging securities fraud under the Securities and Exchange Act of 1934, and also common law fraud, defendants have moved for a stay pending arbitration. Plaintiff has cross-moved for a determination that there is no basis for arbitration of plaintiffs' claims and for an order declaring defendant's arbitration demand invalid and a nullity. For the reasons that follow, defendants' motion to stay pending arbitration is denied, and correspondingly, plaintiffs' motion is granted.

*Facts*

In 1980 plaintiff Kyung Sup Ahn, an individual wishing to set up a retirement account as well as a Uniform Gifts to Minors ("UGMA") fund for his minor son, established the two securities accounts at issue in this case. Defendant Rooney, Pace, Inc. ("Rooney, Pace") was the securities broker for these accounts, and defendant Robert Edelstein, an employee and registered representative of Rooney, Pace, the individual principally responsible for managing them. As the entity handling the substantive management of these accounts, Rooney, Pace is known as the "introducing broker."

It is customary in the case of smaller brokers such as Rooney, Pace, for another entity, called the "clearing broker," to perform the mechanical, record-keeping functions relating to the clearance and settlement of various transactions in the customer accounts. In the case of plaintiffs' accounts with Rooney, Pace, it was Bear Stearns, a large investment brokerage firm, that acted as clearing broker.

When plaintiffs began their accounts with Rooney Pace, they also signed a standard, printed agreement with Bear Stearns regarding the latters' obligations as clearing broker. This agreement includes an arbitration clause covering "[a]ny controversy arising out of or relating to [a customer's] cash and/or margin accounts," and also providing that all such arbitration shall be in accordance with the rules of the National Association of Securities Dealers, Inc. or of the New York or American Stock Exchanges (which themselves mandate arbitration of certain member disputes). The arbitration clause of the Bear Stearns customer agreement expressly states, however, that it is not intended to "constitute a waiver of the right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit [the customer] from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction."

This Bear Stearns customer agreement document never expressly mentions Rooney, Pace. Defendant is, however, unambiguously referred to in that paragraph of the agreement pertaining to situations where Bear Stearns' relationship with the customer is that of clearing broker only. In this section Bear Stearns expressly disavows liability or responsibility for any acts or admissions of the introducing broker or its employees.

*Discussion:*

It is basic that there is no duty to arbitrate a particular dispute where there has been no agreement between the parties requiring such disputes to be submitted to arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether a party has or has not agreed to arbitrate is determined on the basis of ordinary contract principles, *Fox v. Merrill Lynch & Co.,*

*Inc.,* 453 F.Supp. 561, 564 (S.D.N.Y.1978), and it is the district court which must decide this question. *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra.* Because this court finds that defendant Rooney, Pace has failed to demonstrate the existence of any agreement between it and plaintiffs that mandates arbitration of the present dispute, defendants' motion to stay pending arbitration clearly must fail.

In support of the contention that plaintiffs' claims against Rooney, Pace and its employee, Robert Edelstein, must be submitted to arbitration, defendants rely solely on the signed agreements between plaintiffs and Bear Stearns, the clearing broker for plaintiffs' accounts. Yet while the Bear Stearns customer agreements invoked by defendants indisputably do require arbitration in the case of disputes concerning "cash and/or margin accounts," it appears equally beyond dispute that defendant Rooney, Pace is not a party to these agreements. Rooney, Pace, however, has not attempted to argue that it actually is a party to the agreement either by explicit or implicit mention. Nor has defendant attempted to demonstrate that the Bear Stearns agreement or at least its arbitration clause has somehow been incorporated into an independent agreement between plaintiffs and itself. See *Massey Coal Export Corp. v. Compania Comercial y Naviera San Martin, S.A.,* 535 F.Supp. 1315 (S.D.N.Y.1982) (Weinfeld, J.) (shipper may not rely on arbitration clause in its charter party agreement with shipowner to enforce arbitration of dispute with buyer where contract with buyer does not incorporate terms of the charter party agreement).

Defendants appear to argue, rather, that because of Bear Stearns' quite essential role as clearing broker in servicing plaintiffs' accounts and also because plaintiffs apparently received the printed Bear Stearns customer agreement forms from the hands of Rooney, Pace employees, a third party beneficiary or an agency analysis should apply. Accordingly, under either analysis the argument would go, Roo-

ney, Pace, as introducing broker is entitled to enforce the terms of the contract entered into between plaintiffs and Bears Stearns.

The relationship between introducing broker and clearing broker, it should be noted, has been deemed by some courts to constitute an agency/principal relationship, see *Okcuoglu v. Hess, Grant & Co., Inc.,* 580 F.Supp. 749 (E.D.Pa.1984), or alternatively, a third party beneficiary relationship. See *Cauble v. Mabon Nugent & Co.,* 594 F.Supp. 985 (S.D.N.Y.1984). Thus, in these cases, introducing brokers have successfully invoked the terms of the customer/clearing broker agreement in disputes arising between the customer and the introducing brokers themselves. Both *Okcuoglu* and *Cauble* are arguably distinguishable from the case now before the court by virtue of the particular types of brokerage transactions at issue. Yet even were such a distinction unavailable, this court would find itself constrained to differ with their conclusions. At least in the present context, it is this court's conclusion that the relationship between introducing broker and clearing broker is susceptible neither to an agency nor to a third party beneficiary analysis.

Under New York State contract law and general common law principles, no colorable argument can be made for the proposition that the relationship between Bear Stearns, as clearing broker, and defendant Rooney, Pace, as introducing broker of plaintiffs' accounts, was a relationship of agent and principal or vice versa. Agency is a fiduciary relationship resulting from a manifestation of consent by one person (the principal) to another (the agent) that the other shall act in his behalf and subject to his control, together with the consent by the other to so act. *Meese v. Miller,* 436 N.Y.S.2d 496, 79 A.D.2d 237 (App.Div. 4th Dept.1981). The element of subservience is essential, for there can be no agency relationship where the alleged principal holds no right of control over the alleged agent. *Mazart v. State,* 441 N.Y.

S.2d 600, 109 Misc.2d 1092 (N.Y.Ct.Cl.1981). There has been no evidence that Bear Stearns and defendant Rooney, Pace are anything other than entirely independent entities. Indeed, Bear Stearns has underscored its separateness from Rooney, Pace by expressly disavowing in its customer agreement any responsibility or liability for the acts of the introducing broker. Because, therefore, the requisite elements both of consent by the principal that the other party act on its behalf, and of retained control by the principal are missing from the Bear Stearns/Rooney, Pace relationship, clearly this it may not be understood as one of agent and principal.

■ Nor may Rooney, Pace be deemed a third party beneficiary of the customer agreement between Bear Stearns and plaintiffs. Obviously Rooney, Pace or any small broker benefits from the agreements of large brokerage firms such as Bears Stearns to provide clearing services for customer accounts. Such small brokers would be in a poor position to manage customer accounts as investment advisor/brokers if they were unable to arrange for the execution of desirable account transactions through an entity capable of acting as a clearing broker. Under general contract principles and New York State law, however, this is insufficient to render Rooney, Pace a third party beneficiary of these contracts between customers and the clearing broker.

Instead, a third party may sue on a contract as a third party beneficiary "only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." *Vazman v. Fidelity International Bank*, 418 F.Supp. 1084, 1086 (S.D.N.Y.1976). See also *Suffolk County v. Long Island Lighting Co.*, 728 F.2d 52 (2nd Cir.1984); *Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 655, 357 N.E.2d 983, 985–86, 389 N.Y. S.2d 327, 330 (1976) (subcontractor not entitled to relief under contract between contractor and owner where no indication existed that contractor and owner intended the contract to run to subcontractor's benefit; mere incidental beneficiary has no right to enforce a particular contract). Since there is no indication in plaintiffs' agreements with Bear Stearns that Rooney, Pace was intended as anything more than an incidental beneficiary of Bear Stearns' promise to perform clearing functions, Rooney, Pace has no standing to enforce the arbitration clause in effect between plaintiffs and Bear Stearns.

Defendants have argued strenuously that the recent trend in the federal courts favoring arbitration of alleged securities law violations and of ancillary state law claims, see, e.g., *Dean Witter Reynolds Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Finkle and Rose v. A.G. Becker Paribas*, 622 F.Supp. 1505 (S.D.N.Y.1985); *MacMahon v. Shearson/American Express*, 618 F.Supp. 384 (S.D.N.Y.1985), mandates arbitration of the 1934 Act claims and the common law fraud claims set forth in plaintiffs' complaint. While it is incontestable that the vigourous encouragement of arbitration in areas once thought to be the exclusive domain of the federal courts, see *Dean Witter Reynolds*, supra; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act violations), may be transforming the resolution process for disputes arising in such areas, this transformation is not so radical as defendants suggest. None of the recent cases reviewed by this court goes so far as to as to mandate binding arbitration where no agreement to arbitrate has ever been reached. Thus, these new trends are simply no help to defendants here. In the absence of any arbitration agreement between plaintiffs and Rooney, Pace, defendants' motion to stay pending arbitration must be denied.

■ Having determined that no agreement to arbitrate exists between plaintiffs and Rooney Pace, it is unnecessary to address plaintiffs' contention that the Bear Stearns arbitration clause invoked by defendants in this motion expressly excludes

372

from its coverage disputes arising under the federal secuities laws.[1]

Because this court has concluded that there is no basis for arbitration either of plaintiffs' federal or state law claims, defendants' motion to stay this action pending arbitration is denied. Plaintiffs' cross-motion for a determination that no basis exists for arbitration of plaintiffs' claims, and for an order declaring defendants' arbitration demand invalid and a nullity, is correspondingly granted.

1. Were the court to have reached this issue, however, assuming it had found the Bear Stearns customer agreement applicable to Rooney, Pace, it is now settled under *Dean Witter Reynolds v. Byrd,* — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) that even if plaintiffs could have avoided arbitration of their federal securities law claims their common law fraud claims would be subject to mandatory arbitration.