**Jack M. LESTER, Plaintiff,**

v.

**Malcolm BASNER, Woodmere Securities, and Bear Stearns & Co., Defendants.**

**No. 86 Civ. 3376 (GLG).**

United States District Court, S.D. New York.

Nov. 16, 1987.

Max Folkenflik, New York City, for plaintiff.

Hartman & Craven, New York City (Michael Golden, of counsel), for defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

In this action alleging securities fraud under Rule 10b–5 of the Securities Exchange Act of 1934, defendants move for a stay of trial pending arbitration. For the following reasons, the motion is granted as to defendant Bear Stearns & Co., but is denied as to defendants Malcolm Basner and Woodmere Securities, Inc.

## I. FACTS

In 1975 the plaintiff, Jack M. Lester ("Lester"), opened securities accounts with defendant Woodmere Securities, Inc. ("Woodmere"); his registered representative (stockbroker) was defendant Malcolm Bas-

ner ("Basner"). At all relevant times Woodmere handled the substantive management of the plaintiff's accounts, acting as the "introducing broker" in all of the plaintiff's transactions. Bear Stearns & Co. ("Bear Stearns") acted as the "clearing broker" for Woodmere, performing the mechanical, record-keeping functions related to the clearance and settlement of various transactions in the accounts of Woodmere's customers. Bear Stearns acted in this role pursuant to a contractual relationship entered into with Woodmere in 1974. Bear Stearns had no direct contact with the plaintiff at any time, save the settlement of his accounts.

At the time plaintiff opened his accounts with Woodmere in 1975, he signed a standard "Customer's Agreement" with Bear Stearns (the origin of that Agreement is unclear from the facts). This Agreement controlled all aspects of the plaintiff's relationship with Bear Stearns, and had been in effect for ten years when this controversy arose. This Agreement contained the arbitration clause at issue in the instant motion. It provided that "[a]ny controversy arising out of or relating to [plaintiff's] cash and/or margin accounts ... shall be settled by arbitration...." The Agreement never refers to Woodmere or Basner.

After Lester had opened his account in 1975 he began buying bonds which had been recommended to him by Basner. Among these bonds were those issued by the Washington Public Power Supply System ("WPPSS"). Plaintiff purchased these bonds in April 1980. The WPPSS bonds did not fare well, however, and are today virtually worthless. Plaintiff filed suit on April 24, 1986 alleging violations of Rule 10b–5.

Immediately after plaintiff filed suit, the defendants attempted to enforce the arbitration clause in his Customer's Agreement with Bear Stearns. This early attempt to force arbitration of plaintiff's claims was abandoned due to the decision of the Second Circuit Court of Appeals in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (1986). *McMahon* held that arbi-

tration agreements were not enforceable when a plaintiff was asserting a claim for securities fraud under the Securities Exchange Act of 1934. Thus, under controlling Second Circuit precedent, the plaintiff's claim was not subject to arbitration.

The parties, in reliance on *McMahon*, proceeded towards trial. This process lasted almost a full year because of delays in completing discovery. In the interim, the Supreme Court reversed *McMahon*, finding that arbitration agreements were to be enforced even when the plaintiff alleges fraud pursuant to Rule 10b–5. *Shearson/American Express, Inc. v. McMahon*, — U.S. ——, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987). Based on the terms of the Customer's Agreement and the Supreme Court's holding in *McMahon*, the defendants now move to stay the trial pending arbitration.

## II. DISCUSSION

Plaintiff raises several objections to the submission of this dispute to arbitration: a) the Agreement is not enforceable by Bear Stearns because the Agreement was not signed by Bear Stearns or, alternatively, the Agreement was not enforceable because Bear Stearns had no accounts with the plaintiff; b) that Woodmere and Basner could not enforce the Agreement because they were not named or referred to in the Agreement; and c) that the defendants waived any right to arbitrate by proceeding with the preparations for trial. We consider plaintiff's objections in turn.

### a) *Enforcement of the Customer's Agreement by Bear Stearns*

The plaintiff claims that the arbitration clause cannot be enforced by Bear Stearns for two reasons. First, Bear Stearns did not sign the Customer's Agreement, allegedly rendering the agreement non-binding and unenforceable. Second, plaintiff asserts that Bear Stearns, by admitting in its brief that "Lester opened no accounts at Bear Stearns," conceded that the arbitration clause could not apply to a dispute between them. Neither argument is persuasive.

There is no duty upon a party to submit a dispute to arbitration unless there is an agreement between the parties so requiring. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). State law governs the determination of whether an arbitration agreement exists. *McAllister Bros. Inc. v. A & S Trans. Corp.*, 621 F.2d 519, 524 (2d Cir. 1980). In New York, the existence of a valid arbitration agreement is governed by N.Y.Civ.Prac.L. & R. § 7501 (McKinney 1980), which requires only that the arbitration agreement be in writing, not that it be signed by the parties to the agreement. New York courts interpreting this section have required that there be some proof that the parties have agreed to arbitration. *Crawford v. Merrill Lynch, Pierce, Fenner & Smith*, 35 N.Y.2d 291, 299, 319 N.E. 2d 408, 412, 361 N.Y.S.2d 140, 146 (1974). That these parties intended to arbitrate disputes is clear. Bear Stearns' intentions are evidenced by its acts. The plaintiff's securities transactions had been processed by Bear Stearns in reliance upon the binding nature of the Customer's Agreement which had governed the parties' relations since 1975. If Bear Stearns had contemplated that this agreement was unenforceable, we find it highly unlikely that it would have provided its services for the plaintiff's account. That plaintiff intended to be bound is witnessed by his signature upon the Customer's Agreement.

Plaintiff's second argument centers on seemingly inconsistent statements in defendants' brief. Plaintiff contends that the defendants' statement "Lester opened no accounts at Bear Stearns," and its later position that the plaintiff had open accounts with Bear Stearns, create an irreconcilable conflict within the brief. Plaintiff asserts that defendants created this conflict in their brief to enable them to use these inconsistent positions to their advantage. In other words, defendants would want to claim that Bear Stearns had no accounts with plaintiff to show that Woodmere and Basner were intended beneficiaries of the Customer's Agreement, and then to claim that Bear Stearns had ac-

counts with the plaintiff so that it could enforce the arbitration agreement itself. Plaintiff contends that because of this conflict the defendants should be held to the earlier admission that Bear Stearns had no accounts with the plaintiff. Plaintiff concludes that if defendants are held to this statement, Bear Stearns will be unable to compel arbitration, because the plaintiff agreed only to arbitrate disputes arising out of his accounts with Bear Stearns.

Plaintiff's argument is unpersuasive. While the defendants' use of the word "account" in their brief was imprecise, it was not contradictory or inconsistent. It is clear that the defendants' statement, that it had no accounts with plaintiff, when taken in context, was merely an attempt to make clear the fact that Bear Stearns, as clearing broker, did not have a direct customer/dealer relationship with the plaintiff. This does not mean that Bear Stearns did not, in its role as clearing broker, maintain an account for the plaintiff. It is apparent that the defendants' use of the word "account," although inartful, was not inconsistent or contradictory. Since defendants are not bound by the statement that Bear Stearns had no accounts with the plaintiff, the arbitration clause in the Customer's Agreement is enforceable by Bear Stearns. Defendants Woodmere and Basner, however, because they are not parties to the arbitration agreement, stand in a different position than Bear Stearns and must be dealt with separately.

### b) Applicability of the Customer's Agreement to Woodmere and Basner

Plaintiff asserts that no agreement to arbitrate exists between himself and defendants Woodmere and Basner because the Customer's Agreement does not name or even refer to them. The defendants counter this argument by claiming that because of the nature of the relationship among the defendants, Woodmere and Basner were either third party beneficiaries of the Customer's Agreement between Lester and Bear Stearns or that an agency relationship existed among all defendants. Defendants argue that under either analysis Woodmere and Basner are entitled to enforce the terms of the Customer's Agreement.

■ It is clear that Bear Stearns, Woodmere and Basner did not occupy the roles of principal and agent. In fact, the contrary is made explicit by the agreement regulating the relationship between Woodmere and Bear Stearns. That agreement provides that "[n]othing contained herein shall constitute [Woodmere] your agent for any purpose whatsoever, and in no event shall we represent to any person, firm or corporation that any relationship of principal or agent exists between us." The defendants cannot now claim that the relationship between them is one of principal and agent. Even without an express denial of a principal and agent relationship, courts have held that one does not exist between the introducing and clearing brokers. See Ahn v. Rooney, Pace Inc., 624 F.Supp. 368, 370–71 (S.D.N.Y.1985) (no agency relationship existed because clearing broker held no right of control over introducing broker). Thus, the argument that Woodmere and Basner can rely on the agreement between Lester and Bear Stearns because they were agents of Bear Stearns fails.

■ Nor can Woodmere and Basner enforce the arbitration agreement as third party beneficiaries to the Customer's Agreement. A party may enforce a contract as a third party beneficiary "only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." Vazman v. Fidelity Int'l Bank, 418 F.Supp. 1084, 1086 (S.D.N.Y. 1976); accord Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655, 357 N.E.2d 983, 985–86, 389 N.Y.S.2d 327, 330 (1976). Thus, the issue becomes whether Woodmere and Basner were intended or merely incidental beneficiaries to the Customer's Agreement between Bear Stearns and Lester.

When choosing among the reasonable interpretations of an agreement, the interpretation which operates against the drafter generally is preferred. Restatement (Sec-

ond) of Contracts § 206 (1979); *Gray v. American Express Co.*, 743 F.2d 10, 18 (D.C.Cir.1984). Here the contract is silent as to whether the terms of the contract apply to Woodmere and Basner. Woodmere and Basner are not mentioned expressly in the Customer's Agreement since by its terms it applies only to Bear Stearns. Nor can any intent to make Woodmere and Basner third party beneficiaries be inferred, since the defendants have shown nothing outside the contract from which such an intent can be drawn. Because no intent to make Woodmere and Basner third party beneficiaries to the contract has been shown, we must conclude that Woodmere and Basner were no more than incidental beneficiaries. Since they were merely incidental beneficiaries to the contract, they cannot enforce the arbitration agreement against the plaintiff. *Ahn*, 624 F.Supp. at 371.

Defendants, in support of their claim that the arbitration clause is enforceable by Woodmere and Basner, rely primarily on *Nesslage v. York Securities, Inc.*, 823 F.2d 231 (8th Cir.1987), *Okcuoglu v. Hess, Grant & Co.*, 580 F.Supp. 749 (E.D.Pa. 1984) and *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985 (S.D.N.Y.1984). These decisions are readily distinguishable. For example, in *Cauble* and *Nesslage*, the courts found that the brokers were third party beneficiaries to the customer agreements involved. These courts, in reliance upon the actions of the parties, found that they intended to allow the broker to enforce the contract. *Cauble*, 594 F.Supp. at 991; *Nesslage*, 823 F.2d at 233. This is an inherently factual determination, and we find no such intent here. As previously noted, there was no course of conduct which indicated that Woodmere and Basner were intended third party beneficiaries. Thus, *Cauble* and *Nesslage* are not in conflict with the present determination. Similarly, in *Okcuoglu*, the court found that the introducing broker acted as an agent for the clearing broker and this agency relationship made enforcement of the agreement by the introducing broker appropriate. *Okcuoglu*, 580 F.Supp. at 751. No agency relationship exists in the present case

since, as discussed *supra*, the agreement between Woodmere and Bear Stearns expressly denies that such a relationship exists. Thus, *Okcuoglu* is not persuasive. The motion to stay trial pending arbitration, therefore, is denied as to defendants Woodmere and Basner.

### c) *Defendants' Waiver of Right to Commence Arbitration*

■ Finally, plaintiff claims that defendants waived the right to commence arbitration because they knew that *McMahon* might be reversed yet they still sent out interrogatories and took depositions. This claim is without merit and must fail. It is simply untenable to suggest that defendants' conduct in this case should have been based on reading the Supreme Court's crystal ball. Unreasonable delays based on such speculation may have made this case ripe for a default judgment.

Further, in *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985) the Second Circuit examined what would constitute a waiver of the right to arbitrate. The court concluded that a "waiver of the right to compel arbitration due to participation in litigation will be found only when prejudice to the other party is demonstrated." *Rush*, 779 F.2d at 887. This was difficult to demonstrate, the court continued, because of the strong federal policy favoring arbitration as a means of dispute resolution. *Id.* Under the facts of this case, the plaintiff has not demonstrated the prejudicial effect of the delay. The defendants acted in the only manner reasonably available to them and cannot be said by these actions to have waived the right to compel arbitration. *See Nesslage*, 823 F.2d at 234 (two-year delay, with active participation in discovery process, not a waiver of the right to compel arbitration).

### CONCLUSION

For the reasons stated above, the motion to stay trial pending arbitration is granted as to defendant Bear Stearns, but is denied as to defendants Woodmere and Basner.

486

The case will be added to the trial calendar in thirty days.

SO ORDERED.