**Dr. Jack H. ZIEGLER, Plaintiff,**

v.

**WHALE SECURITIES CO., L.P. and Heywood Brody, Defendants.**

**Civ. No. H91–5.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 11, 1992.

Timothy S. Schafer, Merrillville, Ind., Stephen D. Williger, Lawrence K. English, Cleveland, Ohio, for plaintiff.

Timothy W. Woods, John B. Ford, South Bend, Ind., Allen G. Reiter, Michael A. Glassberg, Edward L. Sadowsky, David S. Smith, John B. Bevilacqua, New York City, Richard A. Hanning, Hammond, Ind., for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant, Heywood Brody's ("Brody"), Motion to Stay This Action and Compel Arbitration filed February 25, 1991, Defendant, Whale Securities Co.'s ("Whale"), Motion to Stay this Action and Compel Arbitration filed February 7, 1991, and Plaintiff, Dr. Jack H. Ziegler's ("Ziegler"), Motion to Compel and for Sanctions filed February 27, 1991. For the reasons stated herein, this Court hereby GRANTS Brody and Whale's Motion to Stay This Action and Compel Arbitration and DENIES Ziegler's Motion to Compel and for Sanctions.

## BACKGROUND

This case involves alleged securities law violations by Defendant Brody in handling Ziegler's margin and cash accounts. Ziegler alleges violations of section 10(b) of the Securities Exchange Act of 1934, section 12(2) of the Securities Act of 1933, and the Racketeer Influenced and Corrupt Organizations Act, as well as violations of Indiana's securities regulation laws and various other state law claims. In Plaintiff's Complaint, Plaintiff alleges that he opened a margin and cash account with Whale, a registered broker-dealer with its principal place of business in the State of New York. Defendant Brody, an agent and employee of Whale, managed Ziegler's accounts. Whale contracts with another broker-dealer, Cowen & Co. ("Cowen"), to provide securities processing and transaction services. According to industry jargon, Whale is the "introducing broker" and Cowen is the "clearing broker". Under federal securities laws, Brody is also known as a "broker-dealer". *See* 15 U.S.C. 77b(12) (1981); 15 U.S.C. 78c(a)(4) (1981).

Ziegler signed a Margin Agreement with Cowen which governs the rights and obligations in connection with his margin account ("the Margin Agreement"). Paragraph 10 of the Margin Agreement contains the following arbitration clause:

Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement between us, or the construction, performance or breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the NASD or the New York Stock Exchange, Inc. or the American Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election. Judgment upon any

award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The provisions of this paragraph shall also apply to any such controversy involving any agent or employee of yours.

Under the Margin Agreement, the words "I", "me", and "my" refer to persons who signed the Margin Agreement, in this case, Ziegler. The words "you", "your", and "yourselves" refer to Cowen. Paragraph 12 of the Margin Agreement provides that the aforementioned clause applies to disputes arising between an introducing broker-dealer and Ziegler:

> 12. *Correspondent Account; No Agency*—If my account has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you, (i) orders for the purchase or sale of securities or other property from my account, on margin or otherwise, and (ii) any other instructions concerning my account. I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents. *The terms and conditions of this agreement, including the arbitration provision, shall be applicable to all matters between such other broker-dealer and me.* (emphasis added).

The practical effect of the above paragraph is to make arbitration binding on matters between Ziegler and his broker-dealer in connection with transactions in his margin account. In this case, a broker-dealer would include both Defendants, Whale and Brody.

## DISCUSSION

■■■ The Federal Arbitration Act provides that arbitration clauses in contracts are valid and enforceable. 9 U.S.C. § 2 (1970).[1] Under the Act, if jurisdiction is proper in this Court, save for the arbitration clause, upon application of one of the parties, this Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* at § 3 and § 4. Thus, the Act reflects a strong federal policy in favor of arbitration which has been repeatedly recognized by the Supreme Court. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–220, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Whether the parties have agreed to arbitration is determined on the basis of ordinary contract principles. *Fox v. Merrill Lynch & Co.,* 453 F.Supp. 561, 564 (S.D.N.Y.1978). "[W]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration" and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 643 (7th Cir.1981). Further, arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Morrie Mages and Shirlee Mages Found. v. Thrifty Corp.,* 916 F.2d 402, 406 (7th Cir.1990) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The Supreme Court has held that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agree to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

■■■ In order to determine whether a valid arbitration agreement exists, this

---

1. "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such conduct or transaction ... shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."

Court must turn to state contract law. *McAllister Bros., Inc. v. A & S Trans. Corp.*, 621 F.2d 519, 524 (2d Cir.1980). The Margin Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of New York." Thus, this Court must decide whether a valid arbitration agreement exists under New York law. Under New York law, for a valid arbitration agreement to exist it must be in writing, but a party may be bound without signing the agreement. N.Y.Civ.Prac.L. & R. § 7501 (McKinney 1980); *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir.1974); *Lester v. Basner*, 676 F.Supp. 481, 483 (S.D.N.Y.1987).

■■■■ An introducing broker may enforce an arbitration agreement between a client and a clearing broker in two situations. The first situation is based on agency law, where the introducing broker is a disclosed agent of the clearing broker. *See Wilson v. D.H. Blair & Co.*, 731 F.Supp. 1359, 1361 (N.D.Ind.1990); *Okcuoglu v. Hess, Grant & Co.*, 580 F.Supp. 749, 751–52 (E.D.Penn.1984). There is clearly no such agency relationship in this case, as evidenced by the following language in the Margin Agreement:

> ... *I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees, or agents.* (emphasis added).

As agency is a consensual relationship and Cowen disavows any relationship with Defendants Whale or Brody, no agency relationship exists between Whale and Cowen. Further, "[e]ven without an express denial of a principal and agent relationship, the courts have held that one does not exist between the introducing and clearing brokers." *Lester*, 676 F.Supp. at 484 (citing *Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 370–71 (S.D.N.Y.1985).

■■■■ Defendants seek to enforce the arbitration clause as third-party beneficiaries to the Margin Agreement. A third-party beneficiary may only enforce a con-

tract "if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." *Id.* (quoting *Vazman v. Fidelity Int'l Bank*, 418 F.Supp. 1084, 1086 (S.D.N.Y.1976)). Consequently, this Court must determine whether Defendants were merely an incidental beneficiary to the Margin Agreement between Ziegler and Cowen or were intended beneficiaries. Whether the third-party beneficiary is specifically mentioned in the agreement that contains the arbitration clause sheds light on the issue of whether the parties to the agreement intended the third-party to benefit from the contract. *Id.* Ziegler asserts that because Whale and Brody are not parties to the Margin Agreement, did not sign it, nor are specifically referred to in it, they should not be bound by its arbitration clause.

Defendants' strongest case in favor of arbitration under these circumstances is *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985 (S.D.N.Y.1984); *see also Citizens of Southern Securities Corp. v. Braten*, 733 F.Supp. 655, 665 (S.D.N.Y.1990). Although *Cauble* dealt with the Commodity Exchange Act, its principles regarding third-party beneficiary law are applicable here. In *Cauble*, the district court found that the broker and introducing broker were beneficiaries to the margin contract even though the contract did not explicitly grant or deny the introducing broker the right to enforce any of its terms. *Cauble*, 594 F.Supp. at 991. In reaching this decision, the court relied heavily on the manner in which the customer's trading account was handled, which demonstrated that the performance of the customer's contractual obligations under the margin agreement with the clearing house was to be monitored and controlled by his introducing broker. *Id.* The court noted that at the time the customer executed the agreement, the customer was aware of the introducing broker's control of his account. *Id.* Further, the court pointed to a broker's letter to the customer which spelled out the basic terms of the relationship between the customer and the introducing broker. *Id.*

There are marked differences between the *Cauble* case and the case at hand. In the instant case, Defendants offer several documents which aid the Court in determining whether Ziegler and Cowen intended Brody and Whale to be third-party beneficiaries to the Margin Agreement.[2] First and foremost, Defendants point out that the Margin Agreement explicitly states that "[t]he terms and conditions of this agreement, including the arbitration provision, shall be applicable to all matters between such other broker-dealer and me." Second, Defendants offer a confirmation slip issued by Cowen, which states that it is issued "BY ARRANGEMENT WITH WHALE SECURITIES CO., L.P." Third, Defendants provide a statement of account by Cowen prepared for Ziegler which also states that it is made "BY ARRANGEMENT WITH WHALE SECURITIES CO., L.P." Plaintiff claims in his affidavit that there is no contract between himself and Defendants. In addition, he curiously states that "it is my intent and understanding that the Cowen contract provided for arbitration for any ... matters arising from the acts of another broker-dealer as it applies or affects Cowen." In stating this, Ziegler admits that the arbitration clause applies to dealings between Cowen and another broker-dealer, even though the plain language of the arbitration clause states that it shall be applicable to "all matters between such other broker-dealer and me." As previously stated, the "me" in the Margin Agreement refers to Ziegler. Logic dictates that if the arbitration clause applies to Cowen, it must also apply to Ziegler, especially in view of the fact that Ziegler was the only party to sign the agreement.

While it is true that some courts will not find one to be a third-party beneficiary absent specific reference to such party in the arbitration clause or agreement in question, *see Lester v. Basner, supra,* this Court finds that under these circumstances, the Defendants need not be specifically named in the arbitration clause, but need only be referred to in their general terms, *i.e.,* "broker-dealer", and hence Brody and Whale are third-party beneficiaries under the Margin Agreement.

 Further, the language contained in this clause is clear on its face. One who signs a contract, in the absence of fraud or misconduct by another contracting party, is conclusively presumed to know its contents and to assent its terms. *Fustok v. Conticommodity Services, Inc.,* 577 F.Supp. 852, 856 (S.D.N.Y.1984); *Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.,* 64 N.Y.2d 930, 477 N.E.2d 1102, 488 N.Y.S.2d 648 (1985); *British West Indies Guaranty Trust Co. v. Banque Int'l A Luxembourg,* 172 A.D.2d 234, 567 N.Y.S.2d 731 (1991). Ziegler signed this contract and has made no claims of either fraud or misconduct in connection therewith. In signing this contract, he is presumed to have read and assented to its terms, including the arbitration provisions.

As such, Defendants' Motion to Stay this Action and Compel Arbitration is hereby GRANTED, and Ziegler's Motion to Compel and For Sanctions is hereby DENIED.

---

**2.** Neither party explains to the Court exactly how Ziegler came into possession of the Margin Agreement in question.