Curtis WHISLER and Michele
Whisler, Plaintiffs,

v.

H.J. MEYERS & CO., INC., Thomas
James Associates, Inc., and William
Robinson, Defendants.

No. 96 C 3493.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 23, 1996.

Steven Michael Laduzinsky, Pretzel & Stouffer, Chtd., Chicago, IL, Michael Gerard Bruton, Price, Tunney, Loughnane, Reiter & Bruton, Chicago, IL, for Plaintiffs.

Tara Anne Gerard Moran, Stephen C. Voris, Burke, Warren & MacKay, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Curtis and Michele Whisler, brought suit against the defendants, H.J. Meyers & Company, Thomas James Associates, and William Robinson (collectively "the defendants"), alleging, inter alia, violations of various federal and state securities laws. The Whislers claim that the defendants mishandled their securities brokerage account for over two years. The defendants have moved this Court to stay its proceedings and compel the Whislers to arbitrate their dispute according to the terms of their account agreement with the defendants. The Whislers request that the Court stay its decision on this motion and grant them leave to depose two of H.J. Meyers' employees. For the reasons set forth below, the defendants' motion is granted, and the plaintiffs' motion is denied.

### Background

In May, 1993 Mr. Robinson, an employee of H.J. Meyers ("Meyers"),[1] contacted Curtis Whisler to discuss investment opportunities. As a result of that conversation, Mr. Whisler agreed to purchase securities through Mr. Robinson, and Mr. Robinson opened a brokerage account on behalf of the Whislers. Mr. Robinson became the broker-dealer for the Whislers, and Meyers served as the introducing broker. Meyers did not perform the actual trades. It contracted with another company, Cowen & Company ("Cowen"), to serve as the clearing broker for the processing and placement of the securities transactions.

At this point, the evidence is unclear whether the Whislers received an introductory packet, which included the Cowen account agreement, from Meyers. Rex Carlson, a current employee of Meyers, and Mr. Robinson swear that such packets are sent to new customers in the ordinary course of business and that the packet, in fact, was sent to the Whislers. Robinson Aff. ¶ 6; Carlson Aff. ¶¶ 5–6. Messrs. Carlson and Robinson also state that when the Whislers failed to return the account agreement within thirty days, a computer report was generated which notified them concerning which customers had not returned an account agreement. Robinson Aff. ¶¶ 6–7; Carlson Aff. ¶¶ 7–8.[2] As a result, Mr. Robinson sent the Whislers additional copies of the account agreement on more than one occasion. Robinson Aff. ¶ 8.

The Whislers, however, deny receiving this packet. They assert that they did not receive any introductory materials and that they did not receive the account agreement from Cowen until January, 1994. C. Whisler Aff. ¶ 3; M. Whisler Aff. ¶ 3. The Whislers claim that, until February 3, 1994 when they signed the account agreement, they had an oral agreement with the defendants to conduct trades on their behalf. In that time period, the defendants executed approximately twelve stock purchases and six stock sales on behalf of the Whislers. C. Whisler Aff. ¶ 1; M. Whisler Aff. ¶ 1. The Whislers contend that this oral agreement does not

---

1. H.J. Meyers was known formerly as Thomas James Associates. It changed its name during the first quarter of 1995. To avoid confusion, I will refer only to the name H.J. Meyers throughout this opinion, even if a given event or action occurred while the company was known as Thomas James Associates.

2. Curiously, the defendants have not submitted these specific printouts. Rather, they submitted similar printouts to demonstrate their process for handling unsigned agreements. Mr. Robinson claims that he did not save the specific printouts. Robinson Aff. ¶ 8.

require them to submit any disputes about these trades to arbitration. C. Whisler Aff. ¶ 2; M. Whisler Aff. ¶ 2.

The account agreement signed by the Whislers on February 3, 1994 governs their respective rights and obligations concerning the sale and purchase of securities. The account agreement contains the following arbitration clause:

> Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof, shall be settled by arbitration only before the NASD or the New York Stock Exchange, Inc. or the American Stock Exchange Inc. as I may elect. . . .

> Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.The provisions of this paragraph shall also apply to any such controversy involving any agent or employee of yours.

According to Paragraph 12 of the account agreement, the words "I," "me," and "my," refer to the party or parties who signed the agreement, which in this case is the Whislers. The words "you," and "your," refer to Cowen. Furthermore, the account agreement also states that:

> [i]f my account has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you, (i) orders for the purchase or sale of securities or other property for my account, on margin or otherwise, and (ii) any other instructions concerning my account. I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents. *The terms and conditions of this agreement,*

*including the arbitration provision, shall be applicable to all matters between such other broker-dealer and me.* (emphasis added).

The issue is the applicability of these provisions to the parties' dispute.

*Applicability of the Arbitration Clause*

■ The touchstone of a motion to compel arbitration is an agreement between the parties to arbitrate their dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). To determine whether a valid arbitration agreement exists, I must look to state contract law, which in this case is the law of New York.[3] *See Ziegler v. Whale Securities Co.,* 786 F.Supp. 739, 741–42 (N.D.Ind.1992) (applying New York law). Under New York law, a valid arbitration agreement must be in writing, but a party may be bound by the agreement without signing it. N.Y. Civ. Prac. L. & R. § 7501 (McKinney 1980); *Lester v. Basner,* 676 F.Supp. 481, 483 (S.D.N.Y.1987). In the present case, the account agreement is in writing, and the Whislers signed it. Hence, the arbitration provision is valid.

■ The issue now becomes whether the defendants, who did not sign the account agreement and were not parties to it, may enforce its provisions. A broker-dealer and an introducing broker "may enforce an arbitration agreement between a client and a clearing broker in two situations," either through an agency relationship or as a third-party beneficiary to the contract. *Ziegler,* 786 F.Supp. at 742. No agency relationship exists here. The account agreement specifically disclaims any such relationship, and the defendants do not claim that one existed. Rather, the defendants stake their argument on their status as third-party beneficiaries to the account agreement.

---

**3.** The account agreement has a choice of law provision stating that it is governed by the law of New York. Under Illinois law, an express choice of law provision will not be given effect if "it would both violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen [forum]."

*English Co. v. Northwest Envirocon, Inc.,* 215 Ill.Dec. 437, 441, 663 N.E.2d 448, 452, 278 Ill. App.3d 406 (2nd Dist.1996). Neither party has contested the application of New York law to this dispute, and based on the above test, I see no reason to disturb the choice of law provision.

For a third-party to enforce a contract, the parties to that contract must have intended to "confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." *Lester*, 676 F.Supp. at 484 (citation omitted). Third-party beneficiary status has been conferred previously on an introducing broker and a broker-dealer in almost identical circumstances to those present in this case. In *Ziegler*, the court, analyzing an identical Cowen account agreement, found that the broker-dealers had third-party beneficiary status based on the provision contained in the agreement which made the arbitration clause applicable to a broker-dealer. 786 F.Supp. at 743. In making its determination, the court also noted that the plaintiff admitted that the arbitration clause applied to Cowen's relationship with the broker-dealers and that several documents notified the plaintiff of the existence of a relationship between the clearing broker and the broker-dealers. *Id.* Finally, the court concluded that the language in the agreement was clear and unambiguous, and therefore the plaintiff was "presumed to have read and assented to its terms, including the arbitration provisions." *Id.*

The instant case falls squarely within the facts and holding of *Ziegler.* The Whislers do not dispute that they signed the account agreement containing a clause stating that "the terms and conditions of this agreement, *including the arbitration provision,* shall be applicable to all matters between such other broker dealer and me." (emphasis added). Furthermore, they cannot be heard to claim that they did not know that a relationship existed between Meyers and Cowen. When Mr. Robinson first contacted Mr. Whisler, he identified himself as an employee of Meyers. Complaint ¶ 8. Furthermore, Mr. Robinson contacted Mr. Whisler on several subsequent occasions to discuss trades. *Id.* ¶ 10. The Whislers also received quarterly statements from Meyers which detailed their account activity and list-

ed Mr. Robinson's name with the label of "account executive" at the top of those statements. Plaintiffs' Resp., Ex. A. Based on these contacts, the Whislers had sufficient indication that Meyers and Mr. Robinson were acting as their direct broker-dealers. Yet they also knew, even before they signed the account agreement, that Cowen acted as the clearing broker for Meyers.[4] In a Meyers statement covering the period from June to September, 1993, there is a notice which states "when submitting a deposit or payment to your account, please make your check payable to 'Cowen & Co.'; our clearing firm where your account is held." Plaintiffs' Resp., Ex. A. Hence, the Whislers had notice prior to signing the account agreement that Cowen was the clearing broker for Meyers.

As the court found in *Ziegler,* the language of the arbitration clause itself and the provision making it applicable to "such other broker-dealer" is clear on its face. The Whislers have not claimed that the defendants engaged in any fraud or misconduct in connection with the signing of this agreement, and thus they are "conclusively presumed to know its [the agreement's] contents and assent to its terms." *Ziegler,* 786 F.Supp. at 743. Given the surrounding circumstances, the general reference to the defendants as broker-dealers in the account agreement permits them to invoke the arbitration clause. *See id.*

### Scope of the Arbitration Clause

The Whislers also argue that, regardless of the applicability of the arbitration clause to the defendants, the clause does not apply to the transactions conducted prior to their signing of the account agreement. Essentially, they contend that these trades fall outside the scope of the clause. I disagree.

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (1994), which applies to this case, a strong presumption in favor of arbitration exists, and "any doubts concern-

---

4. I do not rely on any of those introductory materials in this analysis because of the dispute over whether or not the introductory packet was sent. If, however, the Whislers did receive those materials, they clearly would have explained the relationship between Meyers and Cowen. Defendants' Reply, Ex. B.

ing the scope of arbitrable issues should be resolved in favor of arbitration ..." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The arbitration clause at issue states that it will apply to *"any controversy* arising out of or relating to any of my accounts ...." (emphasis added). Such a statement "speaks in terms of relationships and not timing," and therefore, the transactions that occurred prior to the signing of the account agreement also must be submitted for arbitration. *See Rand Bond of No. Amer., Inc. v. Saul Stone & Co.*, 726 F.Supp. 684, 687–88 (N.D.Ill.1989) (Shadur, J.); *see also Trott v. Paciolla*, 748 F.Supp. 305, 308–09 (E.D.Pa.1990) (holding that "[i]f this contention has any merit at all, it addresses the scope of the arbitration clause, and is therefore an issue for the arbitrators"). Consequently, the Whislers' argument that the arbitration clause cannot be applied retroactively must fail. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 333–34 (10th Cir.1993); *R.M. Perez & Assocs. v. Welch*, 960 F.2d 534, 539 (5th Cir.1992); *Shotto v. Laub*, 632 F.Supp. 516, 522 (D.Md.1986) (holding that "whether plaintiffs signed the agreements before or after opening their accounts, or even before or after the claims arose, does not change the fact that they signed written agreements to arbitrate claims arising out of their account").

### Conclusion

For the foregoing reasons, the defendants motion to compel arbitration is granted. Accordingly, I also will grant their motion to stay the proceedings in this Court. The plaintiffs motion for leave to take depositions is denied.