Janice ANTINOPH, Florence Budovitch, Pat Chalphin, Harold Edelson, Rita Edelson, Miriam Epstein, Lynett Watson, George Watson and Linda Watson, Plaintiffs,

v.

LAVERELL REYNOLDS SECURITIES, INC., Judson D. Laverell, Roger A. Reynolds, Mark Siemon and Broadcort Capital Corp., Defendants.

Civ. A. No. 88–3664.

United States District Court, E.D. Pennsylvania.

Jan. 17, 1989.

---

Alan K. Cotler, Gerald Chalphin, Richard S. Schlegel, Pepper Hamilton & Scheetz, Philadelphia, Pa., for plaintiffs.

Thomas J. Ziomek, Peter J. Mooney, Charles V. Stoelker, Jr., Philadelphia, Pa., for Laverell Reynolds Securities, Inc., Judson D. Laverell, Roger A. Reynolds.

David C. Franceski, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Broadcort Capital Corp.

Charles V. Stoelker, Jr., Meehan and Stoelker, Philadelphia, Pa., for Mark Siemon, Broadcort Capital Corp.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Plaintiffs seek recovery of approximately $400,000 in damages for securities which they purportedly lost because of the fraudulent practices and securities laws violations of the defendants. Pending before this court are motions by the Laverell firm, Judson D. Laverell and Roger A. Reynolds (hereinafter referred to as the "Laverell defendants") and Broadcort Corp. (hereinafter referred to as "Broadcort"), to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted and failure to plead fraud with particularity. In the alternative, both defendants have made motions to compel plaintiffs' claims to arbitration. Upon the reasoning set forth in the following memorandum, I will grant in part defendant Broadcort's motion to dismiss, deny the Laverell defendants' motion to dismiss, and will deny both defendants' motion to compel arbitration.

## FACTS

The complaint, filed on May 4, 1988, alleges violation of the Federal Securities laws, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5, and Rule 10b–3 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–3, as well as Pennsylvania statutory and common-law fraud claims.

For the purposes of the present motion to dismiss, the allegations of the complaint will be taken as true. The substance of plaintiffs' claim is that Mark Siemon, a broker for the Laverell firm, conducted fraudulent practices in the trading of plaintiffs' options which were known and were tolerated by both the Laverell defendants and Broadcort causing plaintiffs to suffer loses in excess of $400,000.

In opening their accounts, all plaintiffs, with the exception of Florence Budovitch, Harold Edelson and Rita Edelson, signed a standard option agreement with the Laverell firm and a customers agreement with the Broadcort Corp. These agreements set out the relationship between the parties. The relationship was that all option transactions initiated between the Laverell firm and the plaintiffs would be processed through the Broadcort Capital Corp. which would serve as a clearing agent since the Laverell firm did not have the facilities to carry out option trading. After Broadcort processed the transactions between plaintiffs and the Laverell firm it would mail plaintiffs confirmation slips along with monthly margin statements. Each of these agreements contained arbitration clauses.

Plaintiffs allege that neither the Laverell firm nor Siemon explained to them the risks involved with option trading.

Eventually, Siemon informed plaintiffs that there were losses as the result of his trading.

Plaintiffs allege that the Laverell firm did not have any program providing for the diligent supervision of its customers' accounts and that they knowingly and recklessly permitted Siemon to commit illegal and wrongful activities.

Plaintiffs further allege that Siemon improperly settled their accounts without reporting to the SEC and Siemon churned plaintiffs' accounts to increase commissions.

Both the Laverell defendants and defendant Broadcort move this court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint on the grounds that plaintiffs' allegations failed to state a claim upon which relief can be granted as it relates to them, based on the following arguments: (1) because they owed no duty to plaintiffs; and (2) because plaintiffs have failed to plead their claims with sufficient particularity. In the alternative, both the Laverell defendants and defendant Broadcort request that any claims which have not been dismissed with respect to them be compelled to arbitration in accordance with the terms of the agreements among the parties. This court will proceed to address the merits of these motions *seriatim.*

## I.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiffs contend that the Laverell defendants and defendant Broadcort are primarily liable under the anti-fraud provisions of the Federal Securities laws. In addition, plaintiffs also assert that defendant Broadcort is secondarily liable under the theory of aiding and abetting. On the other hand, the defendants assert that plaintiffs' entire complaint against them should be dismissed for failure to state a claim upon which relief can be granted. Both the Laverell defendants' and defendant Broadcort's sole contention in support of their motions is that they owed plaintiffs no duty to disclose any violations of the other defendants, specifically Siemon.

In deciding a motion to dismiss, the court must accept as true well pleaded factual allegations made in the complaint and must resolve all reasonable inferences in the light most favorable to the plaintiff. *Bogosian v. Gulf Oil,* 561 F.2d 434, 446 (3d Cir.1977); *Copper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957).

■ In order to establish primary liability under the antifraud provisions of the Federal Securities Laws, the plaintiffs must show that the defendants intentionally or recklessly misrepresented or failed to disclose a material fact in connection with the purchase or sale of securities. Securities Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); (6). However, in nondisclosure or omission situations, there must be some duty to disclose. For example, in *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980), the court held that in non-disclosure situations, a party must have a duty to disclose information before his failure to do so will support liabilities and stated: "Mere bystanders, even if aware of the fraud, cannot be held liable for inaction since they do not ... associate themselves with the venture or participate in it as something they wish to bring about."

■ It is well established that a duty to disclose arises when there is a fiduciary relationship or some relationship of confidence or trust. *Dirks v. SEC,* 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911, 921; *Chiarella v. United States,* 445 U.S. 222, 232, 100 S.Ct. 1108, 1116, 63 L.Ed. 2d 348; *S.E.C. v. Rogers,* 790 F.2d 1450 (9th Cir.1986). The same elements and duty to disclose similarly are required for common-law fraud.[1] However, absent a

---

1. To establish a claim for common-law fraud, there must be a misrepresentation made for the purpose of inducing reliance on the false statement. Restatement (Second) of Torts § 551(2)(a) (1976). One who fails to disclose material information prior to the consumma-

tion of a transaction commits common-law fraud only when he is under a duty to do so. Restatement (Second) of Torts § 551(2)(a) (1976). The Pennsylvania common-law requires the existence of a confidential relationship as prerequisite to liability for omissions.

fiduciary relationship, circumstances may dictate that an independent duty to disclose exists. In determining whether such a duty exists the court must consider the following factors:

"the relationship between the parties, the parties relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment decisions, and defendant's role in initiating the purchase or sale."

*First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *reh'g denied,* 564 F.2d 416 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed. 2d 802 (1978).

A fiduciary relationship exists where there is "a relationship involving trust and confidence, and the proof must show confidence reposed by one side and domination and influence exercised by the other." *Lehner v. Crane Co.,* 448 F.Supp. 1127, 1131 (E.D.Pa.1978) (citations omitted). In *Consolidated Oil and Gas, Inc. v. Ryan,* 250 F.Supp. 600, 604 (W.D.Ark.1966), *aff'd,* 368 F.2d 177 (8th Cir.1966), the court held that a fiduciary relationship "arises whenever a trust, continuous or temporary, is specially reposed in the skill or integrity of another, or the property, or pecuniary interest, in the whole or in a part ... is placed in the charge of another; it may exist in the absence of a specific or technical trust agency." The court stated that in addition to the plaintiff reposing its trust in the defendant, the defendant must also have accepted the fiduciary relationship. Therefore, mere trust and confidence in another, may not, in itself, create a fiduciary duty. *Id.* at 604.

Plaintiffs claim that both the Laverell firm and the Broadcort Corp., clearing agent, knew of the alleged improprieties on behalf of Laverell's employee and failed to act or disclose to the plaintiffs the alleged wrongdoings. It generally follows that in order for plaintiffs to sustain a claim for all of the counts in their complaint except count XIII, there must be some duty on behalf of the defendants owed to the plaintiffs.

■ With regard to the Laverell defendants, it is well established that a broker is a fiduciary to his or her customer. *Alfaro v. E.F. Hutton & Co.,* 606 F.Supp. 1100 (E.D. Pa.1985). Furthermore, in *Rolf v. Blyth Eastman Dillon & Co., Inc.,* 424 F.Supp. 1021 (S.D.N.Y.1977), the court held that to ensure that the broker fulfills his fiduciary duty and to protect the investing public, the broker's employer is subject to the same obligations as the individual broker. Therefore, the Laverell firm and the individual Laverell defendants are under the same duty to disclose material information as is their employee, defendant, Siemon, and cannot escape liability by claiming they had no duty to disclose.

■ On the other hand, defendant Broadcort's role was that of a clearing house for stock transactions initiated by the Laverell firm.[2] Generally, a clearing agent is under no fiduciary duty to the owners of the securities that pass through his hands. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979) *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Defendant Broadcort's conduct consisted of mailing confirmation slips of plaintiffs' transactions and monthly statements. Plaintiffs have failed to allege that defendant Broadcort played any greater role in these transactions than that of a clearing agent.

---

*City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463 (D.C.Pa.1985).

**2.** Plaintiffs' signed an agreement with Broadcort stating Broadcort's obligation/relationship with plaintiffs. Paragraph 12 of the agreement provides:

Until receipt from the undersigned customer of written notice to the contrary, you [Broadcort] may accept from such other bro-

ker [introducing broker] without inquiry or investigation by you:

(a) orders for the purchase or sale in said account of securities and other property on margin or otherwise; and

(b) any other instructions concerning said account. You shall not be responsible or liable for any acts or omissions of such other broker or its employees.

In the absence of a fiduciary relationship, this court cannot find that defendant Broadcort had any other duty to speak. In *City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463 (M.D.Pa.1985), the court dealt with a similar omission between a clearing agent and the owners of securities/plaintiffs. The court held that even though the defendant benefited indirectly from plaintiff's transactions, the defendant clearing agent played no role in initiating the transaction between the plaintiffs and their broker. Since there were no facts alleged showing that defendant was aware that the plaintiffs were relying upon it in making their investment decisions, there could be no relationship between plaintiffs and defendant clearing agent that would give rise to a duty to disclose.

Similarly, in the case at bar, the plaintiffs have alleged nothing more than that defendant Broadcort had knowledge of the alleged improprieties of the Laverell defendants and benefited indirectly from commissions derived from those transactions. In applying the holding in *Bradford Trust Co.*, this court can find no allegations in plaintiffs' complaint which sufficiently establish an independent duty to disclose. Since this court finds no fiduciary relationship or any other independent duty to disclose, liability may not be imposed upon Broadcort for its omissions on the basis of plaintiffs' complaint. Therefore, absent an affirmative duty to act on the part of Broadcort, it logically follows that the only possible remaining vulnerability in plaintiffs' complaint is under a secondary liability theory of aiding and abetting.

In *Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139 (3d Cir.1973), the court listed three elements which must be established in order for aiding and abetting liability to be applicable, stating: "(1) that an independent wrong exist; (2) that the aider or abetter knew of the wrongs existing; and (3) that substantial assistance be given in effecting that wrong." As noted, Broadcort readily acknowledges that plaintiffs aver facts supporting Broadcort's

actual knowledge of the underlying wrongdoing and thus the first two requirements have been met.

As for "substantial assistance," the court in *Walck v. American Stock Exchange, Inc.*, 565 F.Supp. 1051 (1981) (citing *Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793 (3d Cir.1978)), held that mere knowledge of a violation alone without assistance or a duty to disclose the violation, is not an actionable wrong and will not extend vicarious liability where defendant's conduct is nothing more than inaction. The *Walck* court added that although plaintiff's complaint, stating that the defendant knowingly, with scienter, withheld from plaintiffs facts comprising the alleged violations, is arguably enough to defeat defendant's motion for judgment on the pleadings, it cannot impose civil liability for a Rule 10b–5 violation unless an identified duty has been breached. *Id.* at 1060 (quoting *Chiarella v. United States*, 445 U.S. 222, 237, 100 S.Ct. 1108, 1119, 63 L.Ed.2d 348 (1980) (Stevens, J., concurring).

As noted, plaintiffs' sole contention is that Broadcort had actual knowledge of the underlying wrongdoing. This court rejects the narrow duty of disclosure urged upon it by the plaintiffs and holds that mere inaction or silence does not amount to substantial assistance. Although plaintiffs contend that a fiduciary relationship existed, liability may not be imposed upon defendant Broadcort for mere omissions on the basis of the facts pleaded in the complaint. Those portions of the complaint which refer to such omissions, therefore, will be dismissed, but plaintiffs are granted leave to replead with more specificity the facts concerning Broadcort's role as a fiduciary.

## II.

### MOTION TO DISMISS FOR LACK OF PARTICULARITY

■ The defendants' final contention is that the complaint must be dismissed because plaintiffs have failed to plead fraud with particularity pursuant to F.R.C.P. 9.[3]

---

**3.** This rule provides that "in all averments of   fraud ... the circumstances constituting fraud

As previously discussed, all claims against the defendant Broadcort are dismissed. Therefore, since all of the plaintiffs' claims for brokers fraud against defendant Broadcort are dismissed, I need only address the sufficiency of the pleadings with regard to the Laverell defendants.

Under the Federal Rule of Civil Procedure 8, the complaint need only set forth a short and plain statement of claims sufficient to give defendants fair notice of the nature of the claims and the grounds upon which the claims are based. *Bogosian v. Gulf Oil*, 561 F.2d 434, 446 (3d Cir.1977). However, it has been held that Rule 9(b) by its very languages creates an exception to Rule 8 when a party is pleading fraud. *Arpet, Ltd. v. Homans*, 390 F.Supp. 908, 912 (W.D.Pa.1975).

More recently, the Third Circuit in *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983) (quoting S.C. Wright & A. Miller, Federal *Practices and Procedures*, § 1298 at 407 (1969), held in regards to Rule 9(b), that "focusing exclusively on the particular language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." The particular mandate, in other words, should not be viewed as a formal checklist of specific points one must allege to survive a motion to dismiss, but rather in terms of rule 9(b), the purpose should be: "... to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurios charges of immoral and fraudulent behavior." *Seville Indus. Mod. v. Southmost Mod*, 742 F.2d 786, 791 (3d Cir.1984), *cert denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Rule 9(b) "should not be used to create an insurmountable obstacle to the bringing of Section 10(b) actions and it must be read in conjunction with the general principle of notice pleading adopted by

the Federal Rules." *Summers v. Lukash*, 562 F.Supp. 737, 739 (E.D.Pa.1983); *Thomas v. Tramiel*, 105 F.R.D. 568 (E.D.Pa. 1985); *Cottman Transmission Systems, Inc. v. Dubinsky*, 95 F.R.D. 351, 352 (E.D. Pa.1982).

Plaintiffs' complaint goes far beyond informing defendants of their "precise misconduct" and "safeguarding defendants against spurios charges." For example, plaintiffs aver: (1) the details of the guarantees and promises made by Mark Siemon which induced plaintiffs to trade options (*see*, plaintiffs' complaint pp. 15–21); (2) the misrepresentation and outright lies made by Siemon which induced plaintiffs to retain their accounts and make additional investments (*see*, plaintiffs' complaint pp. 25–32); and (3) Siemon's trading in plaintiffs' accounts contrary to express instructions (*see*, plaintiffs' complaint pp. 33–34).

With regard to the Laverell defendants, plaintiffs' complaint is replete with allegations supporting the duty each defendant owed to the plaintiffs, the misrepresentations and material omissions attributed to each, the actual knowledge and recklessness of each, and the reliance of plaintiffs on the representations of these defendants as professional broker dealers. For example, plaintiffs allege that no inquiry was made by these defendants despite an affirmative duty imposed by the NASD rules.[4]

The defendants' claim that plaintiffs must plead specific misrepresentations with respect to each particular recipient is without merit. In *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1108 (E.D. of Pa.1985), the court held that "less specificity is required when the complaint presents the claim of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings." Similarly, in *Capalbo v.*

---

... shall be stated with particularity." F.R. Civ.P. 9(b).

**4.** *See* Plaintiffs' complaint p. 22, 23, 36–38, 44–46, failure of defendants to explain material risks of options trading, to deliver options prospectus, to obtain requisite option approvals, p. 22; plaintiffs' complaint; no program implemented providing for supervision, p. 23; repeated warnings to principals from the clearing broker Broadcort, pp. 36–37; awareness of Siemon's wrongdoing, p. 38; past history of Siemon giving rise to knowledge, recklessness, pp. 44–45; and registered option principal's duty and breach thereby, p. 46.

*Paine Webber, Inc.*, 672 F.Supp. 1048, 1050 (N.D.Ill.1987), the court held that Rule 9(b) does not require plaintiffs to identify which particular misrepresentations were made to each plaintiff. The *Capalbo* court also held that the purpose of Rule 9(b) is to ensure that defendants receive fair notice of the particular circumstances underlying plaintiffs' fraud claims.

## III.

## MOTION TO COMPEL ARBITRATION

The Laverell defendants request, in the alternative, a denial of their respective motions to dismiss, that all plaintiffs' claims, both federal and pendent state claims, be compelled to arbitration. Plaintiffs have raised multiple issues in which they assert that their claims should not be compelled to arbitration. Plaintiffs assert that the agreement between plaintiffs and the Laverell defendants, the standard option agreement, is not binding and if the court should determine to the contrary, that the agreement does not include the individual Laverell defendants and thus their claims should be litigated.

■■■ An agreement to arbitrate is nothing more nor less than a contract. *George Campbell Painting Corporation v. Brotherhood of Painters & Alied Trades, District Council*, 480 F.Supp. 120 (E.D.Pa.1979). This court must compel arbitration of those claims which are expressly covered by an arbitration agreement regardless of whether or not federal claims in the same action are to be litigated. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). However, there is no duty upon a party to submit a dispute to arbitration unless there is an agreement between the parties so requiring. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Before there can be arbitration of federal securities claims there must first be an express, unequivocal contract between the parties to arbitrate their claims. *Par–Knit Mills, Inc. v. Stockbridge Fabrics*, 636 F.2d 51, 54 (3d Cir.1980).

■■ With regard to the Laverell defendants, the only document produced to show an agreement to arbitrate is the Standard Option Agreement which does not include the names of the Laverell firm, Judson Laverell, Rodger Reynolds, or Mark Siemon. In fact, the Standard Option Agreement produced by the Laverell defendants appears to be a Broadcort form document.

In 1987, this court was faced with a similar agreement purporting to compel arbitration of the plaintiff customer's claims in *Adams v. Laidlaw*, C.A. No. 87–0165, 1987 West Law 13388 (E.D.Pa. July 6, 1987). In *Adams*, plaintiff customers sued their introducing broker who then proffered the clearing broker's "Margin Agreement" as evidence of an arbitration agreement in his motion to compel arbitration. The Honorable Clifford Scott Green held that the agreement to arbitrate was between plaintiffs and the clearing broker, not between plaintiffs and the introducing broker, stating:

> "It is clear that plaintiffs' agreement to arbitrate was between plaintiffs and Pershing, the clearing broker, and not Laidlaw, the securities broker dealer. The reference in the Margin Agreement to "us" refers only to the parties to the Agreement—plaintiffs and Pershing. Laidlaw is not mentioned in the Margin Agreement. Laidlaw contends that the Margin Agreement was intended to benefit Laidlaw; however, the Margin Agreement states without ambiguity that it limits the liability of Pershing and does not mention or confer any benefits upon Laidlaw."

Westlaw slip op. at 3.

Other courts have likewise held that purported agreements to arbitrate, which fail to name or refer to the introducing broker or registered account representative, as in the instant case, may not be enforced by the non-contracting, broker dealer parties. *Lester v. Basner*, 676 F.Supp. 481, 484–85 (S.D.N.Y.1987); *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 370 (S.D.N.Y.1985).

**1192**

In sum, plaintiffs are not bound to arbitrate their claims against the Laverell defendants based on federal or state law. If the Laverell defendants desired to have their customers sign agreements to arbitrate any controversies against them, they should have had their customers sign an agreement which lists the Laverell firm's name and clearly identifies the parties to the agreement. The only party listed in the document which the Laverell defendants have produced is Broadcort.

Therefore, this court finds that all plaintiffs' claims against the Laverell defendants are not compelled to arbitration. An appropriate order follows.