**Gertrude STANDER, Plaintiff,**

v.

**FINANCIAL CLEARING & SERVICES CORPORATION, Domestic Arbitrage Group, Inc., Rushmore Securities, Jerry W. Czin and John Does Nos. 1–10, Defendants.**

**No. 88 Civ. 1350 (PKL).**

United States District Court,
S.D. New York.

Feb. 23, 1990.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Joseph F. Clyne, of counsel), for plaintiff.

Gaston & Snow, New York City (Eva M. Posman and Mildred Trouillot, of counsel), for defendants Financial Clearing & Services Corp. and Affiliated John Does.

LEISURE, District Judge.

This is a securities fraud action arising out of defendants' allegedly improper trading in plaintiff's account. Plaintiff alleges that as a result of defendants' improper activities, particularly during the stock market crash of October 1987, she lost her entire investment and accumulated substantial trading deficits. Defendant Financial Clearing and Services Corporation has come to the Court on behalf of itself, and any of the listed John Doe defendants affiliated with that company, urging dismissal of the first cause of action in the complaint against them, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has cross-moved for an order staying the arbitration proceeding with defendant Financial Clearing & Services Corporation.

## BACKGROUND [1]

Plaintiff Gertrude Stander ("Stander") is an elderly widow, allegedly naive in the ways of securities investing. In early 1987, Stander opened an investment account with defendant Domestic Arbitrage Group, Inc. ("Domestic"), through defendant Jerry Czin ("Czin"), a vice-president of Domestic. Stander allegedly told Czin that she was only interested in conservative investments that would provide some on-going income. In March 1987, Stander transferred $80,000 into an account set up by Czin for investment purposes. A month later, Domestic advised Stander that all of the trades in her accounts would be maintained by defendant Financial Clearing and Services Corporation ("FiCS"). In May 1987, Stander signed a customer agreement, margin account agreement, and an option account agreement with FiCS, to allow FiCS to maintain records on her account and process any trades in that account. FiCS required Domestic to provide executed copies of these documents before FiCS would service any account managed by Domestic.

Stander alleges that over the next five months, FiCS, at the direction of Czin and Domestic, executed hundreds of risky options trades in her account. During this period, due to losses in the option trading ordered by Czin and Domestic, FiCS made four demands on Stander for additional cash input into her account to cover margin deficiencies. Stander alleges that she did not understand those demands when she received them, and was told by Czin to ignore them when she asked for information regarding those demands. Stander never made the cash inputs demanded by FiCS. Nonetheless, FiCS continued to process trades in Stander's account authorized by Czin.

Losses accumulated in the account almost from the moment Czin began trading activity. However, the losses were severely exacerbated by the swift and dramatic downturn in the stock market in the second week of October 1987. On October 19, 1987, the day the Dow Jones Industrial Index dropped over 500 points, FiCS informed Stander that her account was some $211,000 in deficit. A week later, FiCS informed Stander that it had liquidated her account, but that, even after liquidation, her account showed a deficit of some $274,166.93.

Plaintiff commenced this action on February 3, 1988. On May 24, 1988 the parties agreed to arbitrate all claims except those arising under the federal securities laws, though FiCS continued to assert that plaintiff's securities laws claims were also arbitrable. On August 10, 1989, this Court issued an opinion and order refusing to compel arbitration of the securities laws claims, but finding that plaintiff's complaint failed to allege sufficiently fraud by FiCS, and thus dismissed the claims against FiCS pursuant to Fed.R.Civ.P. 9(b). *Stander v. Financial Clearing & Services Corp.*, 718 F.Supp. 1204 (S.D.N.Y.1989).

FiCS has now returned to the Court, after plaintiff's filing of an amended complaint, alleging that plaintiff has failed to state a claim against FiCS for which relief can be granted, and thus urging dismissal

---

**1.** A more detailed description of the events in this case can be found in this Court's prior opinion in this matter. *Stander v. Financial Clearing & Services Corp.*, 718 F.Supp. 1204 (S.D.N.Y.1989).

of the complaint pursuant Fed.R.Civ.P. 12(b)(6). Plaintiff has cross-moved to stay FiCS' pending arbitration proceeding on the non-securities law claims arising from this litigation.

## DISCUSSION

*A) Defendant FiCS' Motion to Dismiss*

A motion to dismiss under Fed.R.Civ.P. 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). The Court must accept plaintiff's allegations of facts as true together with such reasonable inferences as may be drawn in her favor. *Murray v. City of Milford, Connecticut,* 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686, Fed.R.Civ.P. 8 requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 102 (*cited in Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). For the purposes of a Rule 12 motion, "The pleading is deemed to include any document attached to it as an exhibit, Fed.R. Civ.P. 10(c), or any document included in it by reference." *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (citations omitted).

"The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (citations omitted). "Dismissal of a complaint for failure to state a claim is a 'drastic step.' " *Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 80 (2d Cir.1985) (citations omitted).

FiCS is a clearing broker. Its duties are to provide record-keeping functions for the accounts it handles, and, in some cases, to accomplish the actual settlement of trades for those accounts. *Lester v. Basner,* 676 F.Supp. 481, 482 (S.D.N.Y.1987). The clearing broker normally has no direct contact with the individual customer, except for mailing copies of reports and records regarding the account to the customer on a regular basis. Trades are ordered through or by the retail broker, who has personal contact with the customer. Such was the situation in the instant case. There is no allegation that FiCS or its employees ever had direct contact with Stander. Stander did sign a customer and other agreements with FiCS, but this was done through the auspices of Domestic. FiCS' only contact in the transactions at issue was with Domestic and Czin, who ordered the allegedly improper trades.

Plaintiff alleges that FiCS aided and abetted Domestic's and Czin's securities law violations. A number of courts have addressed the issue of the liability of a clearing broker as an aider and abetter of securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*j.* The Second Circuit has held that in order to make out a claim for aiding and abetting a substantive securities offense, a plaintiff must allege, "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir.1985), *citing IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980). Viewing the pleadings in the light most favorable to plaintiff, as the Court must for this motion, the Court will accept the uncontested assertion that sufficient facts have been alleged to meet the first requirement for aiding and abetting liability.

The Court, then, must focus on whether plaintiff has sufficiently alleged that FiCS had knowledge of Domestic's and

Czin's securities law violations, and that FiCS provided substantial assistance to Domestic and Czin in their achievement of the violation. It is clear that the simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker. *Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518 (S.D.N.Y.1986), *aff'd,* 867 F.2d 776 (2d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989). Plaintiff must allege that the clearing broker had knowledge of the primary broker's fraudulent activity and gave substantial, knowing assistance to that illegal activity.

Before the Court can determine whether FiCS had knowledge of the securities law violation alleged, it is necessary to examine just what that alleged violation is. Plaintiff asserts that Domestic and Czin misled Stander as to their intent with regard to her account, misled her as to the meaning of the agreements she signed with FiCS, and then manipulated her account in a way designed to maximize Domestic's and Czin's profits, while continuing to mislead Stander as to the status of her account. Plaintiff appears to allege that FiCS, through its clearing activities knew, or should have known, that Domestic and Czin were engaged in illegal activity.

"[A] clearing agent [ ] is generally under no fiduciary duty to the owners of securities that pass through its hands." *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980), *citing Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 & n. 29 (5th Cir.1975). Where

there is no fiduciary duty, plaintiff must allege actual knowledge of the fraudulent activity on the part of the aider and abettor. "We have not used the 'recklessness' standard when money damages are claimed in an aiding and abetting context, except on the basis of a breach of fiduciary duty." *Edwards & Hanly, supra,* 602 F.2d at 484.

██ Plaintiff has alleged that FiCS knew that the other defendants were ordering frequent trades in Stander's accounts that were quite risky, that the trading continued despite unsatisfied margin calls, and that FiCS knew that Stander was an elderly person who initially had conservative investment intentions.[2] Even assuming that FiCS knew of Stander's age and intentions, the Court cannot find that plaintiff has sufficiently alleged actual knowledge of the securities law violation. First, plaintiff had executed at least two documents authorizing Czin as her agent for trading. Amended Complaint ¶¶ 13, 16. Plaintiff does not allege that FiCS knew or should have known that those authorizations were improper. The trading in plaintiff's account was, at all times, conducted by Czin pursuant to those authorizations. FiCS' only contact with the activity of the account was through Czin. Plaintiff does not allege that she directly instructed FiCS to take any action regarding her account. Plaintiff alleges that FiCS knew or should have known that the trading authorized by Czin was improper because of FiCS' alleged knowledge of plaintiff's stated investment objectives. Assuming FiCS was so aware of plaintiff's original intention, FiCS was also faced with a clear authorization for Czin to act as plaintiff's agent on the account. Since there is no allegation that

---

**2.** In asserting that FiCS knew that Stander was an elderly person with conservative investment intentions, plaintiff appears to wish to incoporate by reference in her complaint a purported document entitled "New Account Report" which allegedly was provided to FiCS by Czin. The Court notes that this document, which is essential to plaintiff's allegation of actual knowledge on the part of FiCS, was not attached to the amended complaint as an exhibit, nor was it included in plaintiff's moving papers. The Court is concerned by this limited inclusion of this document. The Second Circuit has stated that "limited quotation does not constitute in-

corporation by reference." *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985). Plaintiff here only asserts the content of this document and its transmission to FiCS. In an allegation of fraud, which on its terms must meet the requirements of Fed.R.Civ.P. 9(b), the Court cannot find this simple allegation as to the content of this document to be sufficient. The Court, for the purposes of this motion, will consider properly alleged FiCS' knowledge of Stander's age and intentions, but will not consider sufficiently alleged the existence of the "New Account Report" or its transmission to FiCS.

FiCS knew that authorization to be fraudulent or improper, there can be no finding that plaintiff has sufficiently alleged that FiCS actually knew that the trades executed at Czin's instruction were improper.

■ Plaintiff asserts that even if FiCS did not have actual knowledge of Czin's fraudulent activity in regard to Stander's account, FiCS should be held to a recklessness standard in regard to its knowledge of Czin's activity because FiCS did in fact have a fiduciary duty to plaintiff under New York Stock Exchange Rule 405. It is clear, however, that the duties imposed under Rule 405 may be divided between the introducing broker and the clearing broker. New York Stock Exchange Rule 382. Domestic and FiCS executed a clearing agreement that so divided such duties. Section 4.2 of that agreement makes Domestic responsible for assuring that all activity under the agreement comports with applicable rules. Fully Disclosed Clearing Agreement, attached as Exhibit B to Plaintiff's Memorandum of Law. Accordingly, the Court cannot find that Rule 405 imposes any fiduciary duty upon FiCS under the circumstances of this case.

■ Finally, plaintiff argues that FiCS had a duty of inquiry to Stander because FiCS knew that Domestic and Czin were acting as Stander's agent. As noted above, however, Stander had executed two documents giving Czin full authority over trading in her account. Plaintiff has not alleged that FiCS knew or should have known that those authorizations were improper. Thus, there was no reason for FiCS to question the scope of Czin's activities. Czin was acting under actual authority granted him by Stander. The Court thus cannot find that FiCS had any obligation to examine Czin's activities.[3] Accordingly, the Court cannot find actual knowledge on the part of FiCS, nor can it find a fiduciary duty on the part of FiCS that would require greater inquiry.[4]

■ Plaintiff also fails to allege sufficient facts to support a claim that FiCS substantially assisted in Domestic's and Czin's fraudulent activity. Plaintiff alleges that FiCS aided the fraudulent activity by continuing to execute and record trades in Stander's account despite Stander's failure to meet margin calls, and despite FiCS' alleged knowledge of Stander's initial conservative investment goals. A simple allegation of inaction can make out a claim of aider and abettor liability "only where there is a conscious or reckless violation of an independent duty to act." *IIT, supra,* 619 F.2d at 927. As noted above, the only duty the Court finds FiCS had to Stander was a duty to report on the activity of her account. That FiCS did faithfully. It would be an unfortunate stretch of liability to hold that a clearing broker, whose only privity-created obligation to an investor is a reporting one, must undertake the obligation of insuring that the investor, who has signed customer agreements outlining the broker's responsibilities, fully understand the reports provided, and that the investor acts on them in the most prudent manner. Such would be taking paternalism to an extreme.

■ Plaintiff does not allege that FiCS aided Domestic and Czin in their misrepresentations. She does not allege that FiCS encouraged Czin's churning of her ac-

**3.** Plaintiff relies on *General Overseas Films, Ltd. v. Robin International, Inc.,* 542 F.Supp. 684 (S.D.N.Y.1982), *aff'd* 718 F.2d 1085 (2d Cir.1983) for its assertion that FiCS had a duty to inquire. In *General Overseas,* however, the party on whom a duty to inquire was imposed was relying on the actor's apparent authority. Further, there were substantial indications which went unheeded that the alleged apparent authority did not exist. These facts are inapplicable to the current situation.

**4.** This does not mean that FiCS had no duty toward Stander. Stander executed a series of agreements with FiCS that imposed upon FiCS certain reporting duties related to her accounts. However, plaintiff does not allege that these duties were breached, and indeed bases certain of her allegations against Domestic and Czin on the fact that they misrepresented to her the meaning of the reports that she did receive from FiCS. Further, since FiCS was sending accurate and complete activity reports to plaintiff, and plaintiff alleges no effort to complain directly to FiCS regarding the content of those reports, FiCS had even less reason to question Czin's actions in respect to plaintiff's account.

counts. She alleges that FiCS did not act to stop Czin's acitivities which were facially authorized by two documents signed by Stander at different times. Plaintiff also alleges that FiCS took profits from the trade authorized by Czin. In essence, then, Stander argues that by clearing and servicing her account in the manner agreed to both by Domestic and Stander, FiCS substantially assisted in Domestic and Czin's illegal activity. The Court has already noted that a clearing broker cannot be held liable as an aider and abettor simply because it performed its contracted-for services. *Baum, supra.* Plaintiff has alleged that by performing its contracted-for services, clearing trades in plaintiff's account and reporting on those transactions, FiCS was an aider and abettor to Domestic and Czin's activities. Absent some fiduciary duty of FiCS to plaintiff, which has not been alleged in the amended complaint, such inaction does not make out a claim for aiding and abetting. Accordingly, plaintiff's claim of aiding and abetting a securities law violation against FiCS must be dismissed.

### B) *Plaintiff's Motion to Stay FiCS' Arbitration*

Plaintiff has moved to have this Court impose a stay on arbitration proceedings either already begun or imminent on plaintiff's non-securities law claims against FiCS. Further, plaintiff requests the Court to order expedited discovery on the matters still before the Court and also set an early trial date on those issues. The Court denies each of these applications.

■ The Congress and federal courts have expressed a strong policy favoring arbitration. " '[The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' " *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir.1987), *quoting Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d

158 (1985) (emphasis in original). "A party must demonstrate prejudice before it can defeat efforts to resolve a dispute through arbitration." *Graphic Scanning Corp. v. Yampol,* 850 F.2d 131, 133 (2d Cir.1988).

■ Plaintiff has entered into agreement with Czin and Domestic, staying arbitration with those parties, pending resolution of the matters now before this Court involving those parties. Plaintiff claims that FiCS' failure to enter into a similar agreement, and its subsequent decision to pursue immediate arbitration of those claims not before this Court results in a prejudice to her claims. Plaintiff provides no legal basis on which the Court may act to stay the pending arbitration, other than an implicit assertion of this Court's equitable powers.

The Court declines to so exercise its powers. First, the Court's dismissal of the securities law claims against FiCS reduces any potential prejudice arising from parallel, simultaneous proceedings. After this opinion and order, all of plaintiff's remaining claims against FiCS will be before the arbitrator. Second, to the extent that plaintiff's arbitration with FiCS may be affected by the decision to stay her arbitration with Domestic and Czin, the Court cannot find that it should shift the burden to FiCS simply because plaintiff chose a certain litigation route with other parties through an agreement to which FiCS was not a party. Finally, the Court takes seriously, as it must, the federal policy in favor of arbitration, and will not interfere with an arbitration proceeding, absent a showing of a pressing need for Court intervention. Thus, the Court will not order a stay of the arbitration between plaintiff and FiCS.

Similarly, the Court will not order an expedited discovery schedule and early trial for this matter. Plaintiff was offered the opportunity to arbitrate all her claims and chose, instead, to oppose arbitration of some of her claims. As plaintiff's counsel well knows, the choice of litigating certain claims, while it offers certain advantages, also comes with certain costs, which include the conducting of discovery in a regular and thorough manner. This case is in the capable hands of United States Magis-

trate Barbara Lee for supervision of discovery. The Court will not interfere with the discovery schedule set by the Magistrate. If plaintiff wishes an adjustment of the discovery schedule, she should take that issue to the Magistrate.

### CONCLUSION

Defendant FiCS' motion to dismiss Count One of the Amended Complaint against it is granted.

Plaintiff's cross-motion to stay arbitration and for expedited proceedings is denied.

The reference of this matter to United States Magistrate Barbara Lee for general pre-trial supervision is renewed.

SO ORDERED.