Brian BURNS, Plaintiff,

v.

RICHFIELD SECURITIES, INC., et al., Defendants.

OTRA SECURITIES GROUP, INC., a Delaware Corporation, and Otra Clearing, Inc., a Colorado Corporation, Counter–Complainants,

v.

Brian BURNS, Individually and Brian Burns, D.C., P.C. Retirement, a Utah Corporation, Counter–Defendants,

Nathan Drage, Richard Leedy, Michael W. Strand, USA Medical Corporation, a Wyoming Corp., Does I–X, Third–Party Defendants.

No. 2:89–CV–1010–B.

United States District Court, D. Utah, C.D.

Dec. 10, 1992.

Edward T. Wells, Robert J. Debry & Associates, Murray, UT, for plaintiff.

David W. Brown, J.H. Bottum & Associates, Salt Lake City, UT, for defendants.

## ORDER DENYING DEFENDANT EMMETT A. LARKIN CO.'s MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge, Sitting by Designation.

The above-entitled matter having come before the Court upon Defendant's Motion for Summary Judgment, Plaintiff's Motion in Opposition To Defendant's Motion for Summary Judgment, and defendant Emmett A. Larkin Co.'s Motion To Strike Affidavit of Plaintiff Brian Burns, and the Court having reviewed the motions and all other material on file herein, and being fully advised in the premises FINDS and ORDERS as follows:

### Background

Plaintiff Burns is a resident of Utah. Defendant is a corporation domiciled outside of Utah. In the first week of August 1989, Burns entered into an agreement with Richfield Securities ("Richfield") and Emmett A. Larkin, Co. ("Larkin") to purchase 1,500,000 shares of common stock of USA Medical, Inc.

Larkin contracted with Richfield to serve as a clearing broker for Richfield. The agreement stated that Larkin would provide clearing functions for Richfield. In turn, Richfield was to act as the "introducing broker." Larkin's function as the clearing broker was to prepare confirmations and comparisons of the trade between defendant Richfield, the purchasing broker acting on behalf of Burns, and another defendant, Otra Financial Group, Inc. ("Otra") who was the selling broker. Ultimately, Richfield was supposed to deliver the stock received from Otra to Burns.

Burns deposited approximately $150,000 into an account at Larkin which was maintained by Larkin for Richfield. Larkin alleges that its role regarding this deposit was strictly clerical and that Burns was instructed by Richfield to deposit the money with Larkin.

Otra refused to deliver the stock to Richfield. Otra would honor neither the trade nor the "buy-in" of the stock at issue.[1] Otra subsequently informed the purchase and sales department of Larkin that the trade for the 1,500,000 shares of USA Medical, Inc. had been cancelled by both Otra and Richfield. Once Otra refused to honor the trade or buy-in, Richfield instructed Larkin to cancel the trade. Larkin alleges that it is customary in the industry for introducing brokers such as Richfield to verbally instruct clearing brokers such as Larkin to cancel trades on behalf of the introducing broker.

Richfield, as agent for Burns, did not have the financial capacity to complete a buy-in when Otra reneged on its obligation to deliver the 1,500,000 shares. Apparently, Richfield had agreed with Burns to perform a buy-in should Otra renege during the deal. The trade was cancelled officially on August 18, 1989.

Burns commenced this action originally by filing and serving a complaint alleging that Burns had a contract with both Larkin and Richfield for the purchase of the stock. The complaint alleged that Larkin and Richfield breached the contact by failing to deliver the stock to Burns. Burns further contended that Larkin and Richfield were to act as brokers for Burns and that they did so in a trade with Otra Securities Group, Inc. Burns complained that when Otra failed to deliver the shares to Richfield, both Larkin and Richfield were under a duty pursuant to Rule 59 of the National Association of Securities Dealers to "buy-in" the stock which Otra failed to deliver. Burns also alleges that Larkin unlawfully interfered with the contract between Burns and Otra.

All defendants other than Larkin and Richfield have settled with Burns. Richfield is out of business, has not defended this action, and is not represented by counsel.

Larkin contends that there was no contract between itself and Burns, and that at

---

**1.** Burns alleges that when Otra failed to deliver the shares to Richfield and Larkin, Richfield should have performed a "buy-in," i.e., purchased the USA Medical, Inc. stock in the marketplace and delivered it to Burns.

all times Larkin was acting simply as a "clearing broker" for Richfield. Larkin claims that all it did regarding the cancellation of the trade was prepare and mail the notice of cancellation. This notice constituted nothing more than a bookkeeping function pursuant to the terms of its clearing agreement with Richfield. Larkin argues that, as a result, the action by Burns against it should be dismissed on summary judgment.

### Standard of Review

The standard for issuing summary judgment was recently stated by the Tenth Circuit:

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 [325], 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511.

*Manders v. Okl. ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989).

### Discussion

■ Generally, clearing brokers performing operational or ministerial duties are not liable to an investor or customer of the introducing broker where the customer suffers losses as a result of the introducing broker's acts. *See e.g., Carlson v. Bear, Stearns & Co., Inc.*, 906 F.2d 315, 317–18 (7th Cir.1990); *Katz v. Financial Clearing & Services Corp.*, 794 F.Supp. 88, 93–4 (S.D.N.Y.1992); *Dillon v. Militano*, 731 F.Supp. 634, 636 (S.D.N.Y.1990); *Stander v. Financial Clearing & Serv. Corp.*, 730 F.Supp. 1282, 1285 (S.D.N.Y.1990).

The critical question before the Court on Defendant's Motion for Summary Judgment is whether Emmett Larkin acted in such a way that its role in the transaction could be characterized as something more than a clearing broker. *See e.g., Militano*, 731 F.Supp. at 636–37. For example, plaintiff can make out a case of aiding and abetting fraudulent activity against a clearing broker only where plaintiff can show that "the clearing broker had knowledge of the primary broker's fraudulent activity and gave substantial, knowing assistance to that illegal activity." *Stander*, 730 F.Supp. at 1286. Similarly, to resist defendant's motion for summary judgment, plaintiff Burns must show genuine issues of material fact regarding whether Larkin exercised some extra-ministerial authority or control over the transaction at issue. *Carlson*, 906 F.2d at 318–19; *Stander*, 730 F.Supp. at 1287; *see also Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F.Supp. 1185, 1188–89 (E.D.Pa.1989).

Burns pleads several theories under which he believes defendant Larkin might be held liable including contract/third-party beneficiary and principal-agent theories. In this case, the Court confronts a problem of law which continues to perplex other courts; that is, which legal theory properly

captures the nature of the tripartite relationship between customer, introducing broker and clearing broker. In *Dillon v. Militano,* the New York district court stated the problem most aptly:

> Although some courts have imposed primary liability against clearing brokers, the true relationship of the clearing broker to the introducing broker and to the latter's customer has not been recognized. *See e.g., Cothren v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. TY–82–363–CA, slip op. (E.D.Tex.1982) (clearing broker held liable for failing to police properly its "agent's," i.e., the introducing broker's acts) (preliminary findings later vacated, but not replaced, when settlement was reached); *Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane,* 85 F.Supp. 104, 121 (W.D.Ark.1949) (clearing broker supplying wire to introducing broker held liable to customer for its failure to "control" the introducing broker and to make sure orders were legally executed).

*Militano,* 731 F.Supp. at 636.

The Court is not convinced that one or the other legal theory best captures "the true relationship" of the parties at bar. However, in the instant case, the surrounding facts and circumstances suggest that the issues sound in contract law. Larkin had a contract with Richfield which stated that Larkin would act as Richfield's clearing broker. Burns had a relationship with Richfield in which Richfield acted as Burns' agent for purposes of purchasing stock. Burns now urges that Larkin is liable to Burns because Larkin owed Burns a duty pursuant to National Association of Securities Dealers ("NASD"), Uniform Practice Code Rule 59 and the amendment thereto

(Securities Exchange Act Release No. 26694). In effect, Burns claims that NASD Rule 59 and the accompanying amendment were part of the Larkin–Richfield contract and that Larkin breached this inherent duty when it acted extraministerially in the transaction at issue.[2] The Court reasons that if NASD Rule 59 and its accompanying amendment created a duty that Larkin must perform a buy-in on behalf of Burns in the event Richfield could not, such a duty would constitute an implied condition of the Larkin–Richfield contract.

Defendant Larkin cites *Lester v. Basner,* 676 F.Supp. 481 (S.D.N.Y.1987) for the seemingly countervailing propositions that (1) a principal-agent relationship does not exist between an introducing broker and a clearing broker, particularly where the language of their agreement provides that no such relationship exists, and (2) Burns cannot be a third-party beneficiary to Larkin's contract with Richfield because neither Larkin nor Richfield intended such a relationship with Burns at the time they contracted. 676 F.Supp. at 484–85.

*Lester* is inapposite for three reasons. First, the issue before the *Lester* court was whether litigation between the parties should be stayed pending arbitration pursuant to an arbitration clause in the customer agreement between clearing broker and customer. In the instant case, the Court is interpreting a contract between clearing broker and introducing broker, not clearing broker and customer. Second, the issues before this Court have nothing to do with arbitration.[3] Third, and most importantly, this Court's finding that the contract between a clearing and introducing broker *may* contain an implied condition incorporating Rule 59 and amendments thereto is

---

**2.** One might also argue that Larkin's exercise of extraministerial authority and control changed its status from that of an agent to that of principal; or, alternatively, made Larkin an agent of Burns. The main problem with such an analysis is that the clearing agreement between Richfield and Larkin contained a provision which stated that no principal-agent relationship shall exist between Richfield and Larkin. See the Court's analysis regarding *Dillon v. Militano infra.*

**3.** The Court believes that the policies and industry practices animating the need for arbitration clauses contracted for between clearing brokers

and customers are substantially different from the policies and industry practices which animate the tripartite relationship in the case at bar. *See e.g.,* JERRY W. MARKHAM, COMMODITIES REGULATION: FRAUD, MANIPULATION & OTHER CLAIMS, PART II SECONDARY LIABILITY, CHAPTER 4, SECONDARY LIABILITY: AGENCY AND CONTROLLING PERSONS, § 4.05 (1990) (cited on WESTLAW as "CB SEC13 s 4.05"); PETER M. FASS & ROBERT J. HAFT, INVESTMENT LIMITED PARTNERSHIPS AND OTHER PASS-THROUGH VEHICLES, PART I, CHAPTER 6A, BROKER-DEALER COMPLIANCE FOR REAL ESTATE LIMITED PARTNERSHIP SYNDICATIONS, § 6A.07 (1991) (cited on WESTLAW as "CB SEC4 s 6A.07"). *Compare* Anthony Detoro,

in harmony with *Lester.* The fact that Rule 59 may constitute an implied condition to the Larkin–Richfield agreement does not mean that Larkin and Richfield had a principal-agent relationship, nor does it imply that Burns was a third-party beneficiary to the contract.

Consequently, Burns' most compelling argument is that "Emmett Larkin made the decision to induce Richfield to agree to cancellation of the trade when it became apparent a buy-in might require Emmett Larkin to advance money to fulfill its duty under NASD Rule 59." Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment by Emmett A. Larkin Company at 15.

Burns' argument contains two assertions. First, Burns asserts that Larkin retained a mandatory duty pursuant to Amendment 59 to complete a buy-in on behalf of Burns when Richfield could not complete it. Second, Burns asserts that Larkin "induced" Richfield to cancel the trade and therefore Larkin exercised extraministerial authority or control over the transaction. To resist summary judgment, Burns must present the Court with something more than "a scintilla of evidence" on which a jury could reasonably find that Larkin owed Burns a duty to buy-in on his behalf, and that Larkin breached the duty by inducing Richfield to cancel the buy-in at issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The Court initially must determine if the amendment to Rule 59 creates a duty flowing from Larkin to Burns to complete a buy-in on behalf of Burns. Even if such a duty exists, Burns still must present evidence that Larkin breached that duty (i.e., induced Richfield to cancel the buy-in), and that the breach damaged Burns.

Securities Exchange Act Release No. 26694 (April 4, 1989), 54 F.R. 14404, approving amendment to Section 59 of the National Association of Securities Dealers ("NASD") Uniform Practice Code which governs close-out procedures, states in relevant part that

> The amendment requires buy-ins for cash or guaranteed delivery for NASDAQ securities, where the buyer is a customer other than another NASD member, upon failure of a clearing corporation to effect delivery pursuant to a buy-in notice.

■ A major stumbling block to Burns' argument is that the securities at issue, 150,000 shares of USA Medical, Inc., are not traded through the NASDAQ system. The language of the amendment is unambiguous regarding the type of securities it regulates—NASDAQ securities.[4] In an effort to circumvent this stumbling block, Burns urges that Larkin abided by the language of the amendment to Rule 59 as a matter of industry custom and practice. In support, Burns cites to pages 98 and 99 of the Larkin deposition which states as follows:

> Q: Do you normally do buy-ins as part of [your responsibilities as clearing broker]?
>
> A: Yes.
>
> Q: Do you have an agreement or is it part of your agreement with Richfield that if a stock is not delivered timely that you will do a buy-in on behalf of the customer?
>
> A: No. The buy-in is Rule 59 of the NASD. Has nothing to do with the introducing broker. That is an NASD word.

*Waiver of The Right To Compel Arbitration of Investor–Broker Disputes,* 21 Cumb.L.Rev. 615 (1990).

4. According to the literature supporting the amendment, the NASDAQ exchange suffers from certain problems associated with "short selling" of securities. Near the end of the supporting literature, it states that

> [W]e note that buy-ins for cash or guaranteed delivery can occur under the current

regime *at the buying-in broker's discretion,* and the proposed rule change would make buy-ins mandatory only for public customer accounts, and only after a clearing corporation's failure to deliver.

*See* Securities Exchange Commission Docket 931–932, Vol. 43, No. 6 *discussing* Securities Exchange Act of 1934, Release No. 34–26694/ April 4, 1989, File No. SR–NASD–87–10 (emphasis added). This paragraph confirms that buy-ins are permissive, not mandatory, for securities not covered by the amendment to Rule 59.

Q: That rule in a transaction such as this would apply to your firm not to Richfield?

A: Yes.

Q: And because you do the clearing you have the responsibility to do the buy-in?

A: Basically, yes.

The "Rule 59" to which the Larkin deposition refers, Section 59, (CCH) ¶ 3559 of the NASD Uniform Practice Code regarding "Close–Out Procedures, 'Buying-in' ", states in relevant part that

**Sec. 59**

A contract which has not been completed by the seller according to its terms *may* be closed by the buyer....

**Seller's failure to deliver after receipt of notice**

(c)(i)(a) On failure of the seller to effect delivery in accordance with the "buy-in" notice.... the buyer *may* close the contract by purchasing all or part of the securities necessary to satisfy the amount requested in the "buy-in" notice.... A "buy-in" *may* be executed by a member from its long position and/or from customers' accounts maintained with such member.

The Court notes that, generally, the NASD Uniform Practice Code does not use the word "may" when it means "shall" or "must." Thus, defendant Larkin's obligation to perform a buy-in pursuant to the "non-amended" portion of Rule 59 is "permissive" in nature based on the deliberate use of the word "may" in the non-amended language.

■ However, notwithstanding such deliberate use, Larkin would have a *mandatory* duty to buy-in on behalf of Burns if, as Burns contends, Rule 59 *and its accompanying amendment* were considered by Larkin to be the industry custom and practice. As a result, the Court holds that, even though Rule 59 in its not-amended form makes buy-ins permissive and, additionally, the amendment itself only applies to NASDAQ securities, Burns has alleged sufficient facts such that he may go before a jury to try to prove whether Rule 59 and its accompanying amendment constituted an industry custom or practice. If Burns

can prove that clearing brokers such as Larkin rely on Rule 59 and its amendments as an industry-wide practice, then such a custom or practice would become an implied condition of the Larkin–Richfield contract. Burns may try to prove further that Larkin violated this custom or practice, and that such a violation caused him damage. Alternatively, if Burns fails to prove that such a practice or custom existed, Larkin would not have had a duty to buy-in on behalf of Burns, no implied condition would exist, and Larkin would not be liable for failing to perform the buy-in.

THEREFORE, IT IS

ORDERED that defendant Larkin's Motion for Summary Judgment be, and the same hereby is, DENIED. It is further

ORDERED that defendant Larkin's Motion to Strike Affidavit of Brian Burns is DENIED because this order effectively renders the motion moot.